NATIONAL BANK OF COMMERCE OF OGDEN v. JAMES PINGREE CO.

No. 3888.  Decided August 16, 1923.  Rehearing Denied October 1, 1923.  (218 Pac. 552.)

1.  CORPORATIONS—CORPORATION'S NOTE GIVEN TO BANK IN PAYMENT OF BONDS WHICH EXCLUSIVE OWNER OF CORPORATION WAS OBLIGATED TO TAKE, BASED ON CONSIDERATION.  Where, when one who is the exclusive owner of a corporation was also president of a bank, certain bonds were purchased which the bank exam-

iner required the bank officers to buy and reimburse the bank therefor, a note given by the corporation for part of these bonds is based on a consideration.[1]

2. PLEDGES—REMEDY AGAINST SECURITY MUST BE EXHAUSTED BEFORE ACTION FOR PERSONAL JUDGMENT MAINTAINABLE. Where a debt is secured, in the absence of a showing that the security has become valueless, under Comp. Laws 1917, § 3498, plaintiff cannot maintain an action for a personal judgment, without first exhausting the remedy against the security.[2]

Appeal ,from District Court, Second District, Weber County; *Geo. S. Barker,* Judge.

Action by the National Bank of Commerce of Ogden, Utah, against the James Pingree Company. Judgment for plaintiff, and defendant appeals.

REVERSED.

*Henderson & Johnson,* of Ogden, for appellant.

*DeVine, Howell, Stine & Gwilliam* and *A. W. Agee,* all of Ogden, for respondent.

---

[1] *Bank* v. *Nelson,* 38 Utah, 169, 111 Pac. 907.

[2] *Bacon* v. *Raybould,* 4 Utah, 357, 10 Pac. 481, 11 Pac. 501; *Boucofski* v. *Jacobsen,* 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898; *Coburn* v. *Bartholomew,* 50 Utah, 566, 167 Pac. 1156.

WEBER, C. J.

Defendant appeals from a judgment in favor of plaintiff.

The complaint contains the usual allegations in an action upon a promissory note. The answer admits the execution of the note, and alleges that James Pingree, president of the defendant company, was without authority to execute the note, and that such note was without consideration at the time the same was executed, and that no consideration whatever passed from plaintiff to defendant since the execution of the note.

At and prior to the date of the execution of the note, the

plaintiff bank was owner of, and had in its possession, a large amount of bonds of a corporation known as the Pingree Sugar Company. In the spring of 1920 the bank examiner demanded that the officers of plaintiff bank take these bonds, and reimburse the bank in an amount equal to the bonds. From the date of the organization of the bank till early in 1920 James Pingree had been president of the bank and one of its directors. The requirement of the bank examiner that the officers of the bank take the bonds of the sugar company was considered by the directors at a meeting of June 2, 1920. Prior to that date James Pingree had ceased to be an officer of the bank. The bonds in question, however, were acquired by the bank while he was president and director. At the beginning of the meeting held to consider the bond matter Mr. Pingree was not present, but when requested to do so, he attended. It was then agreed among the directors that each one should purchase from the bank a certain specified number of these sugar company bonds. The bonds were each of $1,000 denomination. Some of the directors paid cash for the bonds taken; others gave their notes, and the bonds purchased were left as collateral security for the payment of the notes. On the 17th of June following this meeting the note in question was given, and in the note was inserted "15B," which is explained by the testimony to mean 15 bonds of the Pingree Sugar Company left as collateral. It was provided in the note also that the bank had authority to sell all or such part of the collateral as might be necessary, at either private or public sale, to apply on the payment of the note secured. Subsequent to that date, and on or prior to December 30, 1920, the plaintiff bank, in connection with the other holders of the sugar company bonds, delivered the same to J. H. F. Last as trustee. Mr. Last was also a director of the bank. These were delivered under some written agreement which does not appear in the record, but it is explained in the testimony that they were to be sent, and were sent, to the Union Trust Company of San Francisco for the purpose of having an indorsement made thereon, permitting the removal of the machinery owned by the sugar company from California to the state of Idaho. At the time of the institution of the ac-

tion, and at the time of trial, these bonds were with the trust company in San Francisco.

The court found that there was a valuable consideration for the execution of the note at the date it was executed; that James Pingree, president of the defendant company, had authority to execute and deliver the note; that at the time of the execution and delivery of the note the defendant deposited with the plaintiff 15 bonds of the Pingree Sugar Company, a corporation, of the par value of $1,000 each, as security for the payment of said note, but that thereafter, with the knowledge, consent, and acquiescence of the defendant, the plaintiff surrendered possession of said bonds to one J. H. F. Last, to be held by him in trust for the said defendant, and that Last, as trustee for said defendant, received from the plaintiff the 15 bonds to be held in trust for said defendant, and that plaintiff now has no lien upon said bonds.

Defendant, appellant here, argues two questions: (1) That there was no consideration for the note; (2) that the court erred in ruling that plaintiff is not required to foreclose its lien upon the 15 bonds of the sugar company before seeking a personal judgment.

Counsel argue that defendant James Pingree Company is a corporation, and, as such, was under no legal or moral obligation to assist the plaintiff bank in taking from its treasury or vaults, by purchase or otherwise, any assets that were objectionable or not satisfactory to the bank examiner. That argument might have some force under a different state of facts. It is undisputed that James Pingree, president of the defendant company, was the president and a director of the plaintiff bank until a few weeks prior to the date of this note. The objectionable security was acquired while he was an officer of the bank. The directors of the bank, as well as Mr. Pingree, purchased the bonds of the sugar company to save the bank from insolvency, or from having it denied the privilege of doing business. By reason of having been president and director of the plaintiff bank, Pingree owed to the depositors and stockholders the legal duty to maintain the solvency of the institution. That duty rested not alone upon Pingree, but upon the other directors as well. Such duty

alone would constitute a consideration for the note. *Bank* v. *Nelson,* 38 Utah, 169, 111 Pac. 907. James Pingree was the exclusive owner of the corporation known as the James Pingree Company, the defendant in this action.

The evidence shows that the corporation was used as a medium through and by which he conducted his individual business. He held in his own name all save four of the authorized shares of stock of that company. Of the remaining four, one share was issued to his father; one to his brother; one to his attorney; and one to an officer of the bank of which he was president at the time of the organization of the James Pingree Company. It is apparent that these other incorporators were named as such to meet the requirements of the statute making it necessary to have five incorporators. The attorney testified that he was quite sure that he received a certificate of stock, but that he immediately returned it. The corporation was to all intents and purposes, both in name and in fact, the same as James Pingree. Any duty or obligation which would constitute a consideration on the part of James Pingree would likewise be a consideration for the execution of a note by the defendant company. *In re Rieger Kapner & Atlmark* (D. C.) 157 Fed. 609; *Searchlight Horn Co.* v. *American Graphophone Co.* (D. C.) 240 Fed. 745. We conclude, therefore, that the first argument of counsel for defendant cannot be upheld.

The second contention that plaintiff should have foreclosed its lien upon the bonds of the sugar company before seeking a personal judgment against defendant, presents a more difficult question.

The legal effect of the execution of the note was a purchase of a specified number of bonds from the bank by the several directors, including defendant. It surely was not a contract to purchase. It was a completed sale. It is likewise apparent, as the court found, that the defendant herein deposited with the bank these bonds so purchased as collateral security for the payment of its note. We are unable to find any testimony in the record to support the finding of the court that subsequent to the date of the execution of the note, the defendant, either by acquiescence or affirmatively, gave to

plaintiff authority to surrender possession of the bonds to Last as trustee for the purpose stated in the finding or for any other purpose. The only testimony in the record that tends to support that finding is the following statement of the witness Last while on the witness stand:

"He (Pingree) said he didn't care what I did with them [the bonds], or something to that effect, when I asked him to sign the agreement. He said I could do what I liked with them."

This testimony cannot be construed as supporting the finding. The conversation referred to occurred some weeks after the bank had transferred the bonds to Last as trustee. The record contains abundant testimony to the effect that Mr. Pingree, both individually and as president of defendant company, declined to sign any agreement or anything giving authority for the delivery of these bonds to Last. It also appears from the testimony of the cashier of plaintiff bank that the bank has never released or relinquished its lien upon the bonds as security for the loan. The cashier testified as follows:

"Q. Has the bank still got those bonds? A. No sir. Q. Where are those bonds? A. They are in San Francisco. Q. And the bank has entered into an agreement for their sale? A. No sir. Q. The bank hasn't sold these 15 bonds? A. No. * * * Q. Does the bank claim to own the bonds? A. No sir."

On redirect, this same witness testified:

"Q. When you say the bank hasn't sold these 15 bonds what do you mean by that—since the time of the receipt you speak of— time of the giving of the note? A. The bank hasn't sold those 15,000. Q. Sold them to anybody in San Francisco? A. Not disposed of them. We still hold them as collateral to that note. Q. Still hold them as collateral to that note? A. Yes."

Then, on recross-examination, he testified:

"* * * Q. I know that, but the bank held these 15 bonds as collateral security to this note, you say? A. All of the bonds that were taken out of the bank were taken out by the directors, as has been stated here, and these directors appointed J. H. F. Last trustee, to take charge of those bonds. He still has charge of them, but holds a receipt from the people in San Francisco, where they were sent to have this notation placed upon them. Q. Are the bonds to be returned, or something else done with them? A. I don't know anything about that. Q. They were sent

to San Francisco, to the trustee there, to release the property that was given to secure the bonds? A. No, not to release the property, but to allow the property to be removed from one place to another. Q. What was to be given in consideration for that removal? A. I don't know."

It is conclusively established that if the plaintiff bank has disposed of these bonds its officers did so without authority from defendant. According to the testimony of the cashier, the bank still holds the bonds as security for the loan. The record is devoid of evidence supporting the finding that the bank has lost its lien on the bonds.

Both the statutes of this state and the decisions of this court deny the right to a plaintiff to maintain an action for a personal judgment, where a debt is secured without first exhausting the remedy against the security in the absence of any showing that the security has become valueless. Comp. Laws Utah 1917, § 7230; *Bacon* v. *Raybould*, 4 Utah, 357, 10 Pac. 481, 11 Pac. 510; *Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898; *Coburn* v. *Bartholomew*, 50 Utah, 566, 167 Pac. 1156.

At the close of the testimony defendant interposed a motion to strike from the record Plaintiff's Exhibit A, the note in question, and assigned as a reason for that motion a material variance existing between the allegations of the complaint and the note introduced in evidence; also that it then appeared from the note that "15B" means 15 bonds of the Pingree Sugar Company, it being the contention that the evidence showed that plaintiff had not resorted to its collateral security, which it was required to do before asking for a personal judgment. The court denied the motion, and that ruling of the court is assigned as error.

We think the court erred in denying the motion. This necessarily results in a reversal of the judgment. Such is the order. Appellant to recover costs on appeal.

GIDEON and THURMAN, JJ., concur.

CHERRY, J., dissents.

FRICK, J., did not participate.