## J. G. PEPPARD SEED CO. v. EKINS.

No. 4750.  Decided June 4, 1931.  (299 P. 990).

*Soule & Spalding,* of Salt Lake City, for appellant.

*Tangren & Crafts,* of Delta, for respondent.

1

CHERRY, C. J.

This is an action to recover upon two promissory notes for $200 each executed by the defendant, and payable to the plaintiff. The execution and delivery of the notes were admitted, but a counterclaim was filed. The action was tried by a jury. A verdict was returned for the plaintiff, upon which judgment was entered. Defendant has appealed.

The judgment is sought to be reversed upon the grounds that the evidence is insufficient to support the verdict. The dispute arises out of certain transactions had between the parties in the year 1925. The plaintiff conducted a plant for cleaning, testing, and grading alfalfa seed at Delta, Utah. The defendant was a grower of alfalfa seed. On August 31, 1925, the plaintiff and defendant entered into a written agreement entitled "Alfalfa Seed Contract," by the terms of which the plaintiff agreed to furnish services relating to field inspection and supervision of growing crops; to clean, inspect, test, grade, certify, and sack alfalfa seed, and at its option to make advances and loans to be properly secured upon growing seed and to store and insure cleaned seed. The defendant agreed to deliver at the plaintiff's plant for cleaning, grading, testing, etc., all alfalfa seed produced by him on "the E. R. Lyman Farm at Delta (total acreage of seed crop ½ of 50 acres)" and to pay for the plaintiff's service "the sum of 35c per hundred pounds on basis of seed as delivered to the plant." The notes sued upon were executed respectively on August 31, 1925, and September 3, 1925, and represented advances or loans made by the plaintiff to the defendant on the respective dates. The notes (which were identical except as to date) recited that "on demand, out of the first proceeds from the sale of alfalfa seed or hay, which the maker hereof agrees to store with the payee," I promise to pay, etc., and "the undersigned represent that the money hereby advanced is for the purpose of harvesting the seed crop already signed up with the

J. G. Peppard Seed Co. The money advanced shall therefore stand as a first lien."

By counterclaim the defendant alleged that he had delivered to the plaintiff a quantity of alfalfa seed worth more than the amount due on the notes; that the plaintiff had disposed of the same to its own use. Defendant prayed for judgment against plaintiff for the value thereof. The plaintiff denied that the defendant delivered any alfalfa seed whatever to it. This was the principal issue at the trial. The question was submitted to the jury upon instructions of which there was and is no complaint, and the jury found for the plaintiff. It is contended, however, on this appeal that the evidence is insufficient to support the verdict, because it is claimed that the evidence shows a delivery of alfalfa seed, by the defendant to the plaintiff, which had a value in excess of the plaintiff's notes.

The evidence disclosed that the "E. R. Lyman Farm at Delta," referred to in the "Alfalfa Seed Contract," belonged to Mrs. Mary E. Jensen; that the defendant, during the season in question, had some arrangement with Mrs. Jensen for the growing of alfalfa seed on the farm referred to upon a crop sharing basis; that a dispute existed between them concerning the share or interest of the defendant in the crop. Mrs. Jensen had agreed to deliver the alfalfa seed grown by her to the plaintiff to secure advances previously made to her. When the alfalfa seed on the "E. R. Lyman" farm was harvested and threshed, and ready to be delivered to the plaintiff for cleaning, etc., Mrs. Jensen notified the plaintiff that the seed from her farm belonged to her, and that, when delivered, it would be for her account. Thereafter the defendant hauled the whole crop of seed to the plaintiff's plant, and was told that Mrs. Jensen claimed all of the seed, and that it would be credited to her account. There is a conflict in the evidence upon the subject of the defendant's response to this notice. A witness for the plain-

tiff testified that the defendant, upon being informed that Mrs. Jensen claimed all the seed, and that it was to be deposited with the plaintiff to her account, replied, "That is all right. I don't care a damn how it is put." At the time of delivery, slips or tickets showing the weights of each load were delivered to the defendant by an agent of the plaintiff. One slip contained the statement, "Recd. from Mary E. Jensen By A. L. Ekins," and three others recited "Recd. from Mary E. Jensen Farm By A. L. Ekins," followed by the number of sacks and weight. The defendant testified that, when he delivered the seed, and was told that Mrs. Jensen claimed it all, he said he did not care how it was placed, so he would be protected. There was evidence offered and received respecting the terms of the crop-sharing agreement between the defendant and Mrs. Jensen, which was conflicting. The defendant testified that he was to have half of the crop. On behalf of Mrs. Jensen there was proof that no definite agreement had been made; that defendant was not to have half the crop; but that the interest of the defendant in the net proceeds of the crop was to be prorated according to the attention and time and expenses he put on it. The defendant had refused to sign a proferred contract, and had been ordered off the place for delinquency and refusal to handle the crop as directed by Mrs. Jensen.

Upon the whole, we think the jury was justified in finding that no delivery of seed was made to the plaintiff by the defendant on his own account, pursuant to the provisions contained in the note and the "Alfalfa Seed Contract." Under the circumstances, it was competent for the jury to find that the plaintiff was warranted in dealing with the seed delivered as the property of Mrs. Jensen, and disposing of it upon her order, which the evidence shows was later done. The jury was justified in concluding that the defendant

never claimed any interest in the seed when it was delivered to the plaintiff.

This conclusion disposes of the appeal. Other questions presented are dependent upon the fact of delivery of seed by the defendant as security for the payment of his notes. Since the jury found against such delivery upon what we deem sufficient evidence, those questions become immaterial.

Judgment affirmed.

ELIAS HANSEN and FOLLAND, JJ., concur.

Hon. EPHRAIM HANSON, J., being disqualified, did not participate herein.

MOFFAT, District Judge (dissenting).

I am unable to concur with the majority of the court in the conclusions arrived at in this cause. A careful reading and re-reading of the record, to my mind, reveals no evidence whatsoever which supports or justifies the verdict of the jury.

There is only one question involved in this cause, and that is: Was A. L. Ekins the owner of one-half or any of the seed delivered to J. G. Peppard Seed Company by him in November, 1925? First, it is admitted by all parties that the seed in question was grown upon and harvested from the E. R. Lyman or Mary E. Jensen farm and delivered to the J. G. Peppard Seed Company's warehouse by the appellant, A. L. Ekins. Second, it is admitted by all parties that the J. G. Peppard Seed Company had made a loan to and claimed to have a lien upon the seed, whether it belonged to Mary E. Jensen and A. L. Ekins or either of them. Third, it is admitted and proved that the J. G. Peppard

Seed Company had a contract entitling it to clean the seed at a specified price. Fourth, it is admitted that, at the time of filing this action, the J. G. Peppard Seed Company had no alfalfa seed in its possession out of the seed delivered by A. L. Ekins.

There is some question as to whether or not the contract which A. L. Ekins had to grow and harvest the crops on the Mary E. Jensen farm was oral or in writing. That matter, however, is not material, because there is no question raised as to the validity of the contract; it being a contract for less than one year. There is some question raised by the witness Mr. Jensen, as to whether or not Mr. Ekins carried on the cultivation and harvesting of the crops in accordance with Jensen's idea of the contract. This is also immaterial.

The case was tried to a jury, and a verdict rendered in favor of the plaintiff below, the respondent here. It is settled law in this jurisdiction that, where the evidence is conflicting the appellate court will assume that the testimony for the party obtaining the judgment is true. *Boroughs* v. *Peterson,* 39 Utah 11, 114 P. 758. And also that if there is any substantial, competent evidence to support the verdict, it will not be disturbed by this court.

An examination of the evidence in the light of these priniciples is convincing that there is no substantial, competent evidence to support the verdict. In condensed form, the facts are: The appellant Ekins was tending a farm referred to as the Jensen or Lyman farm, near Delta, Millard county, Utah, during the season of 1925. Ekins harvested the crop, paid for the harvesting, and delivered the seed harvested to the J. G. Peppard Seed Company. At the time of delivery, slips were made out, the forms being, after stating the amount of seed, numbers, and certain other immaterial matters as follows:

"Received from Mary E. Jensen by A. L. Ekins.
"Received from Mary E. Jensen farm, and
"Received from Mary E. Jensen farm by A. L. Ekins."

In these forms the respondent receipted for the seed delivered to it. Upon this seed so delivered the respondent had a mortgage lien and also a contract for cleaning.

There are two versions of the statement made by the appellant at the time of the delivery of the seed when he was advised as to the Jensen claim and contents of the delivery slips. A witness for the respondent gives the statement made by the appellant as being: "I don't give a damn in whose name it is put" (referring to the seed delivered), while the appellant's version of the remark is: "I don't give a damn, just so I am protected." May it be argued that a man loses title to his property, and a mortgagee his lien, because the owner makes such a statement?

There is an interesting parallel in the testimony of the instant case and a case heretofore decided by this court in *National Bank of Commerce of Ogden* v. *James Pingree Co.*, 62 Utah 259, 218 P. 552, 554:

"We are unable to find any testimony in the record to support the finding of the court that subsequent to the date of the execution of the note, the defendant, either by acquiescence or affirmatively, gave to plaintiff authority to surrender possession of the bonds to Last as trustee for the purpose stated in the finding or for any other purpose. The only testimony in the record that tends to support that finding is the following statement of the witness Last while on the witness stand: 'He (Pingree) said he didn't care what I did with them (the bonds), or something to that effect, when I asked him to sign the agreement. He said I could do what I liked with them.'"

Abundant authority is at hand to the effect that, where a debt is secured, an action for a personal judgment cannot be maintained without first exhausting the security, in the

absence of a showing that the security has become value-less. In *National Bank* v. *Pingree*, supra, it was further said:

"Both the statutes of this state and the decisions of this court deny the right to a plaintiff to maintain an action for a personal judgment, where a debt is secured without first exhausting the remedy against the security in the absence of any showing that the security has become valueless. Comp. Laws Utah 1917, § 7230; *Bacon* v. *Raybould*, 4 Utah 357, 10 P. 481, 11 P. 510; *Boucofski* v. *Jacobsen*, 36 Utah 165, 104 P. 117, 26 L. R. A. (N. S.) 898; *Coburn* v. *Bartholomew*, 50 Utah 566, 167 P. 1156."

In the case of *Salt Lake Inv. Co.* v. *Stoutt*, decided by this court on March 14, 1919, 54 Utah 100, 180 P. 182, 183, it was said:

"If it had been alleged and proven that the original pledgee had disposed of the stock unlawfully, then, in all probability, the defendant would have been entitled to a credit on the note in the sum equal to the value of the stock; or if it had been alleged that the stock had come into the possession of the plaintiff as security for the note, and plaintiff had admitted the fact or had not denied it, we are of the opinion it would have been incumbent upon the plaintiff to account for the stock, and until it did so it would not be entitled to judgment."

Manifestly, when the alfalfa seed upon which the plaintiff had a lien was placed in the possession of the respondent, and, respondent knowing who delivered it, from what farm it came, and that the appellant had borrowed money from the respondent, and had by the express terms of both the notes and the contract given the respondent a lien upon the property, it was the duty of the respondent to hold the property at least until such differences, if any existed, as between Jensen and the appellant were definitely settled, and then apply the property which respondent had in its possession, or the proceeds therefrom, upon the payment of the notes. It appearing that the appellant had an interest

in the property delivered, and that the respondent had a lien upon the appellant's part of it, the appellant was damaged when the respondent voluntarily permitted the property to leave its possession before an accounting was had between the claimants.

There is no pleading in this case setting up title to any part of this seed delivered in the J. G. Peppard Seed Company or any one else other than Ekins. Ekins admits that the Jensens were the owners of one-half of the seed, so that the only question to be determined is: Who was the owner of the other half? If the jury were justified in finding that the Jensens were the owners of all of the seed, or that Ekins was not the owner of any of the seed, then the verdict of the jury should stand, otherwise not.

The trial court, under instruction No. 7, submitted to the jury that, before Ekins could recover upon his counterclaim, he must prove by a preponderance of evidence the material allegations of his counterclaim, and the court then summarized the material allegations thereof in six subdivisions of instruction No. 7, given to the jury as follows:

"1. That the seed or some part thereof was the property of the defendant. 2. That the seed was delivered to the plaintiff by the defendant. 3. That at the time of the delivery of said seed by the defendant to the plaintiff, the said plaintiff knew that said seed, or some part thereof, was the property of the defendant. 4. The number of pounds of alfalfa seed delivered to the plaintiff. 5. The value thereof. 6. That the plaintiff has converted the seed to his own use or otherwise disposed of the seed to the damage of the defendant."

Let us examine each of these specific items and see whether or not the jury were bound under the evidence to find those six items and what the findings, under the evidence, must of necessity be:

(1) "That the seed or some part thereof, was the property of the defendant." Ekins testified as follows:

"Q. State how much of that alfalfa seed that you delivered and described in the yellow sheets, Plaintiff's Exhibit 2 and Plaintiff's Exhibit 3, was your property? A. Half interest.

"Q. Where did you get this seed from? A. Got it from the E. R. Lyman farm.

"Q. Why did you take it from the Lyman farm? A. Because I raised it.

"Q. How much of it was yours? A. Fifty per cent was mine."

### On cross-examination Ekins also testified:

"Q. Jensen was living on the Lyman farm and owned it at that time, didn't he? A. Yes.

"Q. And you were working there with the crops? A. I didn't rent it all, I rented part of it and he reserved the house and part of the land around the house and I had full charge of the rest of it."

A letter written by Mary E. Jensen to the Peppard Seed Company when a dispute had arisen between Ekins and the Jensens, in which letter this expression occurs: "We have left the direction of the harvesting and disposition of the alfalfa seed in the hands of Roy Bishop," and in explanation of that Mr. Jensen testified that "Mr. Ekins objected to arbitration to settle our differences and the only thing I wanted that Mr. Roy Bishop was to do was to advise me as to the proper time of cutting, threshing and delivering of the seed and that is what I went to him to get advice on."

### Then Mr. Bishop testified as follows:

"Q. What was your occupation in November of 1925? A. I was working for the Peppard Seed Company.

"Q. Did you have anything to do with the subject matter involved in this case and if so at whose request? A. Mr. Ekins.

"Q. And at the request of Mr. Jensen? A. Yes.

"Q. What were you to do? A. I was to advise Mr. Ekins as to the proper time to cut the seed.

"Q. And what else? A. And that it should be delivered to the Peppard Seed Company for—to be equally divided.

"Q. Between you and whom? A. I suppose between Mr. Jensen and Mr. Ekins.

"Q. Who told you? A. Mr. Ekins and Mr. Jensen."

The only other evidence to be found in the record as to what part of the seed was owned by Mr. Ekins is the testimony of Mr. Jensen himself, who was recalled upon the reopening of the case, and under direct examination testified as follows:

"Q. Mr. Jensen, did Mr. Ekins own half of the seed that was deposited in 1925, in the name of Mary E. Jensen? A. No.

"Q. Do you know of your own knowledge whether Mary E. Jensen had a contract with Mr. Ekins for half of the seed on that property? A. I know she did not."

Then on cross-examination of those two answers Mr. Jensen testified:

"Q. What interest did he have? A. He had a conditional interest, it was to be established when the crop was gathered and the proceeds realized.

"Q. What conditional interest? A. As to how the crops would work out, how much attention he would have to give to it, such as watering and cultivating it.

"Q. Was that contract with reference to all your crops grown there? A. Yes.

"Q. He didn't have any agreement as to any amount? A. He never in his life would sign an agreement that we wrote out for him.

"Q. But he never did have a certain interest in the hay or this grain? A. Only what would develop of the crop when it was gathered and sold.

"Q. Then what share was he to get? A. It was going to be pro-rated according to the attention and time and expense he put on it.

"Q. Did you ever make an offer to give him a percentage of the crop outright? A. We did, yes. We first refused in the first place to enter into any kind of relations with Mr. Ekins unless we put it in black and white.

"Q. Did you ever offer him a certain percentage of the hay or any other part of this crop? A. Yes.

"Q. Was that also in writing? A. Yes.

"Q. Does that offer state what you understand to be your real contract? A. Yes.

"Q. That is in writing signed by both of you? A. No, he never did sign it.

"Q. It was signed by you? A. We signed our part and asked him for his signature and he refused.

"Q. That is the contract that you claim existed between you? A. Yes.

"Q. And you claim now exists? A. No, not now.

"Q. When was it changed? A. It was changed when he defaulted in handling the crop and we ordered him off the place because of his delinquency and his refusal to handle the crop as per the conversation in the beginning."

Under the evidence above stated, the jury was bound to find "that the said seed or some part thereof was the property of the defendant." Item No. 1 should therefore have been found by the jury in favor of Ekins.

Now, as to item No. 2 submitted to the jury, namely: "That the seed was delivered to the plaintiff by the defendant," no evidence need be quoted on that matter, because it is admitted by all parties; therefore the jury was bound to find for Ekins.

As to item No. 3, "that at the time of the delivery of said seed by the defendant to the plaintiff, the said plaintiff knew that said seed, or some part thereof, was the property of the defendant," Mr. Peppard testified as follows:

"Q. At the time or prior to the commencement of this action, did Mr. Ekins deliver his alfalfa seed to your plant? A. No, sir.

On cross-examination he then testified:

"Q. He had a written lease? A. Yes, he told me at the time he borrowed the money.

"Q. So that, you knew at the time Mr. Ekins signed that contract, that Mr. Ekins claimed an interest in that crop of seed? A. I took his word for it.

"Q. Did he tell you that? A. He claimed it.

"Q. That he had a written lease and that is the reason you wrote that in there? A. Yes, sir.

"Q. Now, you received into your plant all the seed grown on the E. R. Lyman farm in 1925? A. In the name of Mary E. Jensen. I told him that Mr. Jensen demanded the entire seed crop.

"Q. You knew when Mr. Jensen demanded that, that Mr. Ekins was claiming an interest in the crop? A. Yes."

Then Mr. Underhill testified on cross-examination as follows:

"Q. At the time Mr. Ekins delivered the seed, was there any conversation between you and Mr. Ekins? A. I told him I had been instructed by Mr. Jensen it was his seed and he told me how to place the seed and I told him how it was to be placed and he made no objection to it and unloaded."

Then Mr. Fulsom testified:

"Q. Did you purchase any seed grown on the E. R. Lyman farm or the Mary E. Jensen farm in 1925? A. Yes.

"Q. Where was the seed at the time you bought it? A. Stored in the Peppard warehouse."

In further answer to that question Mr. Fulsom said:

"A. I told Mr. Peppard I had bought Ekins' half of the seed raised on the Jensen farm."

Then Mr. Ekins testified:

"Q. Tell us what you said to Charley Peppard? A. I told him I would have half of the seed coming from that place.

"Q. Which place? A. The Lyman place or Mary E. Jensen farm. I told Peppard the whole proposition and he let me have the other two hundred dollars."

Ekins further testified:

"Q. After you had made this arrangement with Mr. Fulsom, did you go back to see Peppard? A. I went back and told him that I had sold the seed and go ahead and clean it.

"Q. Before that had you discussed the sale of it to Peppard? A. Yes.

"Q. State when that was and what the conversation was. A. We were nearly through threshing and I asked him if he wanted to buy it and he says 'Have you got it all delivered?', I says 'no, I have one

more load.' He says 'when you have it all delivered, bring me the samples' so I emptied the last load in and went to Mr. Underhill and he took a sample."

Mr. Ekins further testified to a subsequent conversation in which he said:

"A. A few days after that I was around that way and called in and says 'have you got my seed cleaned?' He says 'Oh, Jensen has been here and took it out and sold it and delivered it.

"Q. What did you say to him? A. What business did you have in letting that go out? He says 'Your name wasn't on it and I couldn't hold it so I let him have it,' so I says 'Well, you better get busy, you have four hundred dollars in that seed and you better send Mr. Maxfield to help me locate that seed."

Certainly in the face of such evidence the jury could not find other than that the Peppard Seed Company knew that some part of the seed belonged to Ekins.

On item No. 4, "the number of pounds" of alfalfa seed delivered to the plaintiff is not disputed. It is shown by exhibits therefor and all parties agree as to that, so the jury could not find item No. 4 otherwise.

Item No. 5. "The value thereof." With respect to this, Mr. Ekins testified that he had agreed to sell the seed to the Rudy Patrick Seed Company for eleven cents per pound. There is no evidence to the contrary.

Item No. 6. "That the plaintiff has converted the seed to his own use or otherwise disposed of said seed to the damage of the defendant." The fact of delivery was proved. It is undisputed and agreed to by all. Then, if item No. 1 must be found in favor of the appellant, item No. 6 must likewise be found in his favor, and the jury could not find otherwise. Verdict, therefore, should have been for the defendant and appellant on his counterclaim. There is no evidence supporting any other situation.

STRAUP, J.

I concur in the dissenting opinion, and think the judgment should be reversed and the case remanded for a new trial.