[No. 26000. *En Banc.* December 11, 1936.]

CHARLES MCKINNIS *et al., Respondents,* v. LOS LUGOS
GOLD MINES *et al., Appellants.*[1]

*John Kelleher,* for appellants.
*O. C. Moore,* for respondents.

MITCHELL, J.—Charles McKinnis and his wife pur-
chased and received certificates for 55,720 shares of
stock in Los Lugos Gold Mines, a corporation, doing
business in Spokane, Washington. Thereafter, the
corporation undertook to reorganize, taking the name
of Los Lugos Consolidated Gold Mines, a corporation.
The plan of reorganization required the surrender of
stock in the old company and the payment of an assess-
ment or transfer fee of two cents a share for an equal
number of shares in the new corporation.

McKinnis and wife did not have the means to pay
the transfer fee on their stock, so they forwarded their
stock, endorsed in blank, to their friend, Sam J. Wil-
son, a stockbroker and an officer of the corporation,
with the request that he pay the transfer charges and
look after having stock taken out in the new corpora-

¹Reported in 62 P. (2d) 1092.

tion. It appears that Wilson paid the transfer charges and, as the testimony shows, took out stock in his name in the new company, to be held by him, as he says, as collateral on account of the advances he made at the request of McKinnis and wife.

Thereafter, the action of *Moore v. Los Lugos Gold Mines* was brought in the superior court for Spokane county to compel restoration to the old company of its assets alleged to have been transferred illegally and without consideration by the old company to the new company. That case reached this court, 172 Wash. 570, 21 P. (2d) 253, with the result that the plaintiff was given the relief sought.

Thereafter, the present action in mandamus was brought in the superior court by McKinnis and his wife against only the Los Lugos Gold Mines, a corporation, and its president and secretary, pleading the action and result of the case of *Moore v. Los Lugos Gold Mines, supra,* also pleading their ownership of stock in the Los Lugos Gold Mines, already referred to herein, and demanding judgment requiring the defendants to deliver to the plaintiffs the original certificates of stock issued to them by the Los Lugos Gold Mines, or, if such original certificates have been lost or destroyed, then issue and deliver to them duplicate or supplemental certificates.

An alternative writ was issued, directing the defendants to deliver the old stock, or, if it was lost or destroyed, to issue and deliver duplicate or supplemental certificates of stock.

The answer to the complaint was a general denial.

The trial resulted in a judgment for the plaintiff "that said alternative writ of mandamus be and is hereby approved and made permanent and peremptory." There was no decision or judgment as to whether the old stock should be delivered or duplicate

stock issued and delivered. The defendants have appealed.

The assignments of error and the arguments have taken a broader scope than the situation warrants. McKinnis and his wife delivered the stock to Wilson, requesting him to advance money for the purpose of having the stock exchanged for stock in the new company. Wilson advanced a substantial amount for that purpose. He has not been repaid any of it. He has not been made a party to this action.

The evidence further shows that the original three certificates of stock issued to McKinnis and his wife are not lost. They were produced in court at the trial. The books of the Los Lugos Gold Mines do not show that the stock has been transferred. On the contrary, the books show that the stock is still standing in the names of Mr. and Mrs. McKinnis, just as when it was issued and delivered to them.

Rem. Rev. Stat., § 3819 [P. C. § 4520], reads:

"The stock of the company shall be deemed personal estate, and shall be transferable in such manner as shall be prescribed by the by-laws of the company; but no transfer shall be valid except between the parties thereto, until the same shall have been entered upon the books of the company, so as to show the names of the parties, by and to whom transferred, the numbers and designation of the shares, and the date of the transfer."

The relief sought of issuing duplicate stock, if the original stock should be lost or destroyed, is, of course, not applicable here, because the original stock is in existence and in court, and the books of the corporation show all of it to be outstanding in the names of Mr. and Mrs. McKinnis, as originally issued.

Thus, it clearly appears that the complaining parties voluntarily delivered possession of the stock to

Wilson, who, upon request, advanced money upon receiving the stock, the money to be used in connection with the exchange of the stock, and that he has not been repaid by them. It appears that he should be heard in any action in which the plaintiffs seek to repossess the stock, and it would seem that the court is charged with the duty, for the purpose of settling all controversy with reference to the possession of, and title to, the stock, to bring into court all parties who have any interest or claim of interest in and to the same. It is a situation which, in order to have a complete determination of the controversy, suggests the remedy provided in Rem. Rev. Stat., § 196 [P. C. § 8277], as follows:

"The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others, or by saving their rights; *but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall cause them to be brought in.*" (Italics ours.)

Reversed, with directions to the trial court to proceed according to the views herein expressed.

ALL CONCUR.