HOYT v. UPPER MARION DITCH CO. et al.

No. 5947.  Decided February 18, 1938.  (76 P. 2d 234.)

*Barclay & Barclay*, of Salt Lake City, for appellants.

*E. D. Hatch*, of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by defendant Lemon and his wife only, from a judgment against them as indorsers on a note and for foreclosure of a pledge of shares of stock given to secure their obligation as indorsers. On June 25, 1929, the Upper Marion Ditch Company made and delivered to W. H. Lemon, or order, its promissory note for $3,420. The note provided: "The makers and endorsers of this note each expressly waive demand, notice of non-payment and protest, and suit against the maker." The note was executed with a printed form as the base. Typewritten thereon was the following: "950 shares of Smith and Morehouse Reservoir Stock deposited with this note as security for the payment of the note." This certificate for 950 shares of said stock was made out to W. H. Lemon and delivered to him. The Upper Marion Ditch Company is not a corporation. The note was executed by its president and director, secretary and director, and three other directors.

W. H. Lemon and Grace H. Lemon, his wife, on approximately October 23, 1929, by indorsement on the back thereof, indorsed the said note to respondent Joseph B. Hoyt. W. H. Lemon indorsed in blank and delivered to Hoyt the stock certificate for 950 shares of Smith & Morehouse reservoir stock. Grace H. Lemon was an accommodation indorser. As far as this case is concerned, she has the same rights and liabilities as has W. H. Lemon. In consequence, when we speak of Lemon, we shall, unless it otherwise appears, include her.

Hoyt started suit on January 30, 1936, joining in the caption of the complaint the Lemons and the Upper Marion Ditch Company, an unincorporated association, and the officers and directors of said company as defendants; but sum-

mons was served only upon the Lemons. The other defendants were never served and never appeared.

The complaint alleges that at the time of the making of the note the Upper Marion Ditch Company was the owner "of certificate No. 5 of the Smith and Morehouse Reservoir Company evidencing and representing 950 shares of the capital stock of the Reservoir Company." (This was not an accurate statement, as certificate No. 5, as above stated, was made directly by the Smith & Morehouse Company to W. H. Lemon, but we shall assume the allegation to stand for a statement that the Upper Marion Ditch Company was the owner of 950 shares of stock of the Smith & Morehouse Company.)

The complaint further alleges that 950 shares were pledged as security to W. H. Lemon for the payment of the note;

"that thereafter, W. H. Lemon and Grace H. Lemon, his wife, the lawful owners and holders of said note and the holders of said security [an inaccurate allegation since the former allegation is that the note and security were delivered only to W. H. Lemon] and that each above mentioned for a good and valuable consideration sold, set over, assigned, and delivered to plaintiff in due course the said promissory note aforesaid, and delivered to the plaintiff said security therefor, aforesaid, * * * and that ever since said sale of said note and delivery of said security aforesaid to the plaintiff * * * plaintiff has been, and now is, the legal owner and holder of said promissory note and said certificate No. 5 aforesaid as security for the payment thereof."

These allegations are set out in detail because they are relevant to the point made by appellants, and later considered, to the effect that under such allegations, showing that plaintiff knew of the interest of the Upper Marion Ditch Company in said security, it should have been summoned by plaintiff as an interested party, and that no complete judgment in favor of plaintiff against the defendants Lemon could be made without bringing into court the Upper Marion Ditch Company. We shall refer to this later, as we think it the

only really important point in the case. In the meantime, we shall consider other points made by appellants.

The defendants admitted that certificate No. 5 was given by the Upper Marion Ditch Company as a pledge but apparently denied that plaintiff was the legal holder of the note and the security at the time of the suit, although admitting that W. H. Lemon delivered the note and certificate No. 5 to plaintiff.

The court found that the Upper Marion Ditch Company "was and is" the owner of the 950 shares of capital stock of the Smith & Morehouse Reservoir Company, evidenced by certificate No. 5 of said Reservoir Company; that said certificate No. 5 was delivered to W. H. Lemon as a pledge; and that W. H. Lemon and Grace H. Lemon, "being the lawful owners and holders of said promissory note and security for a good and valuable consideration sold, set off, assigned, and delivered to plaintiff in due course said promissory note and the security therefor, both duly endorsed without restriction or qualification." It also found that "plaintiff since said sale has been and now is the legal holder of the promissory note and security."

The court entered judgment for $5,229.63, which included interest to December 1, 1936. The court also found judgment in favor of plaintiff on the second cause of action for $431.05 as reimbursement for assessments paid by plaintiff to the Smith & Morehouse Company to protect the security. From this judgment and the order denying a new trial, defendants Lemon appeal.

In defendants' affirmative answer it is alleged that plaintiff first agreed to buy the note for its face value of $3,420; that thereafter he insisted on a reduction and that defendants agreed to a reduction of $196; that plaintiff paid the reduced consideration of the note, taking out $24 paid as an assessment on certificate No. 5. Plaintiff's position is that the consideration first agreed on was $3,225 or $3,250, and that he never asked for and never re-

ceived any further reduction; that he paid $3,200, but that he took out $25 or $50 which he had paid for assessments. The defendants contended that their agreement to take $196 less was in consideration that their names be "scratched off" the note. The court found against them on this contention; found that the plaintiff had paid the price which he originally agreed to pay for the note. It is said that, this being an equity case, we must review the evidence, and that in so doing we will conclude that the court wrongfully found as to the fact that there was not an agreement to take a discount in consideration of the defendants having their names erased from the note. A reading of the evidence convinces us that the finding of the court in this respect is fully sustained. Even in an equity case where there is conflicting evidence and we have doubt as to which conclusion the court should have come to, we will not disturb the finding. The trial court has before it the witnesses in person. Where in an equity case its findings are within the range of permissible conclusions from the evidence, we will not disturb them. The evidence must definitely preponderate against the lower court's conclusions. The plaintiff testified that no such reduction was talked about or agreed to, but that he wanted his check of $1,625 paid on the note returned and the transfer of the note recalled. Mr. Taylor, cashier of the bank, who was present much of the time plaintiff and defendant were together in the bank, said he never heard mentioned the matter of scratching off the names and that had it been mentioned he would have recommended that it be indorsed without recourse. Defendants call attention to the fact that for more than five years no demand was made on either of them for payment of interest or principal of the note and that this is persuasive that Hoyt did not consider them liable thereon. Considering that Hoyt had a similar leniency toward the maker, its persuasiveness in that regard disappears. We think the evidence preponderates in favor of the conclusion of the trial court on this issue and that its finding in this regard cannot be disturbed.

Appellants complain that there is insufficient evidence to support a finding that respondent paid assessments on certificate No. 5 and was entitled to reimbursement for said assessments from appellants. There is a direct and undisputed evidence that Hoyt paid $431.25 assessments on the Smith & Morehouse stock to save it from being sold for assessment. Appellants contend, however, that since the court found that the Upper Marion Ditch Company was owner of this stock they could not be held for these assessments.

If security is given, the holder of the note and security has the same right to make payments necessary to protect the security and charge the indorser as has a payee in respect to a maker where the payee holds security. And if the indorser waives presentment and demand, notice of nonpayment by the maker and suit against the maker, his contract is virtually one to pay the note after it is due upon demand on him. The fact that the security given to insure the fulfillment of this obligation belongs to the maker and was pledged to him and subpledged by him to the holder (granted a subpledge was within his authority) does not derogate from the right of the holder to charge him, the indorser, with such payments necessary to protect and save the security.

The appellants make a point (under which assignment does not appear clear) that in 1932 when, by the acceleration clause, the principal was due, they asked respondent for permission to sell the property pledged and apply it to the indebtedness, and that respondent refused to permit the sale; that respondent held the security for four more years before attempting foreclosure; that the reason respondent refused to permit appellant to sell was because he, respondent, was interested in the Upper Marion Ditch Company and wanted them to have the use of the water represented by the 950 shares in the Smith & Morehouse Company. The rule is, that in the absence of an agreement otherwise, the pledgor must tender the amount due before he can redeem the security. Under some collateral agreements he

may notify the pledgee to sell and apply, but he has no action against an unaccommodating pledgee because of the latter's refusal to grant a request to return the security so that it may be sold.

It is complained that the court erred in providing that the note sued upon be canceled and merged in the judgment. The judgment so provided "in so far as the liability thereon of respondents W. H. and Grace H. Lemon his wife are concerned and affected." This point will be taken care of when we consider the question of failure to bring in the Upper Marion Ditch Company. At this time it need only be said that the judgment attempted to reserve the note intact against the maker and, in effect, only merged the liability of the indorsers in the judgment. But our final disposition of this case will make any further comment on this point unnecessary.

Appellants contend that respondent used the water during the time he held the stock and that he should account for the value of such use as "proceeds" from the security. The question was not raised in the pleadings. No accounting was asked for. It is difficult to see under what assignment the point is made. Hoyt did testify that for a part of one season he used the water. Certainly, it is the duty of the pledgee or subpledgee to collect the accruals from the security and apply them to the debt and thus lessen the indorser's liability as well as that of the maker. And when the property pledged is of such a character as not to be lessened by use, the pledgee does not incur liability by using it, but if from the use of it profits are derived, he must, in the absence of a special agreement, account for them to the pledgor. 21 R. C. L. 665, § 28. If Hoyt obtained the use of the water, to which the 950 shares entitled the holder, to his profit, he can be made to account; but the pleadings should present the issue. The trial court is not compelled to introduce the inquiry sua sponte.

Appellants contend that even if the lower court was correct in its findings it made a mathematical error in the cal-

culation of interest due from September 25, 1930, to December 1, 1936, and that the correct calculation would show the total principal and interest of $118.53 less than found by the court. Perhaps such contention is permissible under the 19th and 22d assignments which assert that the court committed error in concluding and in entering a judgment that plaintiff is entitled to judgment on his first cause of action for the sum of $5,229.63. At all events, if the calculation is incorrect, it may be corrected in the future proceedings as is provided by our decision in this case.

What has been said above clears the way for the final, the most troublesome, and really only important question in this case. In stating the facts it was noted that the Upper Marion Ditch Company was joined as a party defendant but never summoned and its appearance not had. The case went to judgment, therefore, against the indorsers—the Lemons—only. If this were a suit on a note or bill of exchange with no security to be foreclosed, section 104-5-17, R. S. Utah 1933, might be applicable. We need not now determine whether this section deals only with the case of defendants jointly or severally liable because of the same obligation assumed jointly or severally or also with the case of several liable on the same instrument but whose status is different, such as a maker or indorser. This is more than a suit against persons severally liable upon the same obligation or instrument. It involves a suit to foreclose a security. We have in the forepart of this opinion set out certain allegations of the complaint which reveal that plaintiff knew and alleged that the Upper Marion Ditch Company was the owner of certificate No. 5. It pledged its stock ownership to this 950 shares to Lemon for security. He had, therefore, a lien on it for the payment of the note which the Upper Marion Ditch Company made and delivered to him. In accordance with the law of pledge, Lemon had no right to sell the security except after demand for payment and notice, but he had the right to assign his interest as pledgee in it along with the note. Thus Hoyt stepped into his shoes as the lienholder and

at the same time had an indorsee's rights against him. But Lemon, and in turn Hoyt, the plaintiff, only had a lien on this stock of Smith & Morehouse Company. The Upper Marion Ditch Company was the real owner. It had the paramount interest and according to plaintiff's complaint he was aware of it. Lemon in his answer virtually admits the ownership in certificate No. 5 of the Upper Marion Ditch Company. Therefore, before Hoyt could obtain a judgment of foreclosure which would bind the Upper Marion Ditch Company, he must bring into court. He joined it, but did not serve summons upon it. But the matter goes further than the failure to obtain a judgment against the Upper Marion Ditch Company or to bind it. This is not only a case in which a complete adjudication cannot be made as to the res without the Upper Marion Ditch Company being summoned into court, but a complete adjudication cannot be made as to Lemon. This is not the simple case of foreclosure of a mortgage of a security without joining some interested party. In such case the foreclosure may be good as against those actually in court and not as to those who are not in court. But in those cases mostly, those whose interests are foreclosed have no action over against those whose interests are not foreclosed. At least those whose interests in the res have not been foreclosed are not in a position to defend in an action over by those whose interests have been foreclosed because the latter failed to see that the former were joined in the action foreclosing the res.

In this case it is true that had there been no security Hoyt could have obtained judgment against the Lemons, the indorsers, without summoning the makers or could have later pursued the maker. This results from fitting together sections 104-5-17, 104-31-1, 104-3-17, R. S. 1933. But where security owned by the maker has journeyed to the payee and then to his indorsee, the obligations of the indorsee holder are different. If he knows that the maker of the note is the owner, he must join him as a necessary party and bring him into court. If he does not, the court

should do so under section 104-3-25, reading in part: "When a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in." Why, cannot, therefore, in this case a complete determination of the controversy as between Hoyt and Lemon be had without joining the Upper Marion Ditch Company? The answer becomes clear when we consider Lemon's rights against the Upper Marion Ditch Company after Hoyt obtains judgment against him. Under the Negotiable Instruments Act, Rev. St. 1933, 61-1-1 et seq., if Lemon pays the judgment, he has the right under his contract with the Upper Marion Ditch Company to bring an action for recoupment. But the Upper Marion Ditch Company also has the right first to ask that its security be returned on payment. If Hoyt has foreclosed as against Lemon and sold it, Lemon could not fulfill this condition. It is not a case of Lemon saying to the Upper Marion Ditch Company, "Recompense me for what I have paid on Hoyt's judgment against me and go after Hoyt for foreclosing your property without bringing you into court." The answer would be, "Lemon, you were aware that we owned the property yet you permitted the security to be foreclosed without asking us to be brought into court in order that we might pay the note and redeem the security; therefore, we have a defense in your suit against us." It is for the reason that a judgment by Hoyt against Lemon on foreclosing the security as against Lemon, but not as against the Upper Marion Ditch Company, fails to put Lemon in a legal position successfully to sue the Upper Marion Ditch Company, the maker of the note, that Hoyt's judgment against Lemon is ineffective. *Gaumer* v. *Snedeker,* 330 Ill. 511, 162 N. E. 137, 138; *McKinnis* v. *Los Lugos Gold Mines,* 188 Wash. 447, 62 P. 2d 1092. The following language in the first of the above two cases states the rule which applies in this case: "Whenever a party has been omitted whose presence is so indispensable to a decision of the case upon its merits that a final decree cannot be made without materially affecting his interests, the court should

not proceed to a decision of the case upon the merits. The objection may be made by a party at the hearing or on appeal or error, and the court will upon its own motion take notice of the omission and require the omitted party to be made a party to the litigation even though no objection is made by any party litigant."

A helpful discussion is found in the case of *Mann* v. *Whitely*, 36 N. M. 1, 6 P. 2d 468, as to the meaning given by the decisions to the word "necessary" as used in the statutes.

There is another approach to this same conclusion. It is the duty of the security holder to exhaust the security before he can obtain a deficiency judgment against the indorser or maker. *Nat'l Bank of Commerce* v. *James Pingree Co.*, 62 Utah 259, 218 P. 552; *Coburn* v. *Bartholomew*, 50 ■ Utah 566, 167 P. 1156; *Baker* v. *Utah-Idaho Central R. Co.*, 57 Utah 494, 195 P. 635; *Hammond* v. *Wall*, 51 Utah 464, 171 P. 148. The security holder cannot reasonably exhaust the security if at the foreclosure sale no one would buy it, because no one could get a title which would be worth paying 10 cents for the simple reason that the owner's interest would not be foreclosed.

In the case of *Mickelson* v. *Anderson*, 81 Utah 444, 19 P. 2d 1033, 1036, it was held that an attempted foreclosure was void where the owner of the property was not a party to the action. The court said: "Respondent, while seeking to foreclose her mortgage in the first action, failed to effect a foreclosure because the owner of the property was not a party to the action; hence the decree of foreclosure was void and of no effect as such."

This case would seem fairly conclusive that where a pledgee or subpledgee fails to join a known owner, ■ the judgment is void and must be set aside.

Whose duty was it to bring the Upper Marion Ditch Company into court? It was the duty of Hoyt and of Lemon and of the trial court when it appeared that a complete adjudica-

tion could not be made without bringing in the Upper Marion Ditch Company. Section 104-3-25, R. S. 1933. ▮▮ And this appeared when the complaint showed the Upper Marion Ditch Company as the owner; and the answer of Lemon practically admitted it. Of all the parties upon whom this duty rested, the defendant Lemon came closest to fulfilling. In his answer he set up as follows: "That plaintiff has not up to Thursday the 2nd day of April 1936 served or had served any summons on the makers of the promissory note." Respondent observes that this was only meant to aid defendant Lemon to obtain judgment on the note against the maker and that defendant did not have in mind calling the court's attention that the Upper Marion Ditch Company was a necessary party in order to obtain a complete judgment as to the res. Perhaps so, but at least the attention of the court was called to the fact that the Upper Marion Ditch Company was not in court. The plaintiff certainly knew that fact, even joined it as a party but did not serve it. The allegation of the answer set out was on motion stricken. It is only fair to the trial judge who was not the judge who struck it to say that he inquired as to why it had been stricken. But even the defendants made no motion to have the Upper Marion Ditch Company brought in. Perhaps it was not as clear then as it became during the argument before this court that the Upper Marion Ditch Company was a necessary party. In fact, this question is only discussed in the briefs filed after the argument.

Coming to the conclusion that the Upper Marion Ditch Company is a necessary party in order to obtain such a judgment against Lemon as will permit Lemon to come back on it for recoupment, it remains to determine what should be done to remedy the situation. We see no need of trying out again the issue as to whether Hoyt agreed to re- ▮ lease the Lemons on the note. The court has heard all the evidence in regard thereto, and we think correctly concluded on that issue. We think, this being an equity case, that the judgment should be set aside, the case re-

manded, with instructions that if plaintiff elects to proceed, the court take such proceedings as may be appropriate in view of this decision.

As to costs, the appellants may recover twenty-three pages of their abstract which cover all except the evidence and the assignments of error, and for the printing of the last brief filed which deals with the point in regard to which they have prevailed—the parties otherwise to bear their own costs. Such is the order.

FOLLAND, C. J., and HANSON, MOFFAT, and LAR-SON, JJ., concur.