SETH TURNER *versus* RENDOL WHIDDEN.

Where one contracted with another, that his wife should, within six months,
convey and release to the other party her right of dower in certain land
*then* conveyed to him ; if the deed, within the six months, was executed
and delivered to one authorized by the grantee to receive it, or to one not
so authorized, but who was afterwards authorized by him to retain it for his
use, it would operate as an affectual conveyance within the six months;
and the contracting party would have performed the condition of his con-
tract.

Where the plaintiff had conveyed to the defendant certain land, and as part
of the consideration therefor the defendant had contracted in writing to
pay a certain sum then due from the plaintiff to a third person, on condi-
tion that the wife of the plaintiff should within six months release to the
defendant her right to dower in the premises, there is sufficient considera-
tion for the contract, even if the parties were in error in supposing that she
had a right to dower.

And where the defendant contracts to pay, " a claim of S. D. of about one
hundred and fifty dollars," he must pay the amount due to S. D. although
it may amount to fifty dollars more than the sum mentioned.

THE action was brought on a contract, signed by the de-
fendant, bearing date May 24, 1839. The material facts in
the case are stated in the opinion of the Court.

At the trial before WESTON C. J., then holding the Court,
the counsel for the defendant requested the Judge to instruct
the jury, that the execution and delivery by the plaintiff to the
defendant of the deed of release of dower was a condition
precedent to his claiming performance on the part of the de-
fendant ; that by the contract, the plaintiff was bound to exe-
cute and deliver such deed within six months from May 24,
1839, to the defendant, or some one for his use, and give no-
tice thereof to him ; and that executing such deed within the
time and sending it to McAllister, and McAllister's informing
the defendant that he had received the deed and left it at

home, and defendant's replying, "very well, bring it out," was not sufficient performance of the contract on the part of the plaintiff, and that a tender of the deed after the expiration of the six months was too late, if the jury were satisfied that the defendant refused to receive it.

But the presiding Judge did not so instruct the jury, and did instruct them, that if they believed the testimony of Mc-Allister, the deed being sent to him by the plaintiff within the six months for the use of the defendant, was a sufficient compliance with the contract on this point.

The verdict was for the plaintiff, but was to be set aside, if the requested instruction should have been given, or if that given was erroneous.

When the jury came into Court, they returned their verdict for the plaintiff, assessing the damages at \$250. Before the verdict was affirmed, the Judge inquired of them, how they came to that result. The answer was, that they had no evidence as to the amount of damages, and took it from the declaration. It had been, however, in evidence, that Turner was liable to Dunn on a judgment for \$156,34, debt, and \$39,66, costs. The claim of Dunn was thus stated in the contract: "A claim of Samuel Dunn for about one hundred and fifty dollars."

The Judge informed the jury, that the amount returned was manifestly too large, and that the right sum would be \$196,00, and interest from the date of the writ. The jury retired, and returned with a verdict for the plaintiff for \$207,75.

*J. Granger* argued for the defendant, and cited, 10 Mass. R. 456, and 20 Johns. R. 418.

*Fuller* argued for the plaintiff, citing 2 Mass. R. 447; 9 Mass. R. 307; 12 Johns. R. 536; 20 Johns. R. 187; 6 Cowen, 617; 15 Wend. 556; 4 Day, 56.

The opinion of the Court was prepared by

SHEPLEY J. — The plaintiff being the owner of part of lot numbered seven in Calais, on April 23, 1836, conveyed the same in mortgage to William Spring; and on March 6, 1838,

conveyed the equity to Manly B. Townsend in trust to secure the payment of debts or claims, for which he was liable to Hall and Duren, Abner Sawyer, and Samuel Dunn. The claim of Dunn arose from his becoming surety for the plaintiff on a bond payable to Heywood and Lovejoy. On May 24, 1839, the plaintiff conveyed the premises to the defendant, and received from him a contract to settle and pay the claims secured by the deed to Townsend on condition, that the wife of the plaintiff should within six months release to the defendant her right of dower in lot numbered seven. The defendant introduced a deed from Luther Brackett, as sheriff, bearing date on May 23, 1838, purporting to convey the equity to George S. Smith as the purchaser of it on a sale at auction. This sale must have been known to the defendant before he purchased of the plaintiff, for he had the day before purchased the title under it from Mr. Bradbury, to whom Smith had conveyed it. The plaintiff was not married to his wife until after the sale of the equity by the sheriff; and it is now said, that the defendant could receive no benefit from a release of the wife's dower. It appears from the dates of the conveyances, that the arrangements for a sale to the defendant must have been made at or about the time, when the plaintiff's right to redeem would be extinguished; and when, by redeeming from all the incumbrances, her right of dower would have become perfect. And even if the parties were in error in supposing, that she had a right of dower, it would seem, that in estimating the price to be paid by the defendant that right was esteemed to be a valuable one. The defence however rests principally upon the fact, that the deed releasing the dower was not delivered to the defendant within six months. McAlister, who had acted as the attorney of the plaintiff in making the conveyance to the defendant, testifies, that in the course of the summer the defendant inquired of him, if the deed releasing the dower had come, and was anxious, that he should get the deed. It appears, that the deed was duly executed on November 11, 1839, and was sent to McAllister, who soon after saw the defendant at Calais, and who being inquired of by him

if he had got the deed, answered, that he had received it, but had forgotten to bring it out. To this the defendant replied, well, bring it out. McAllister also testifies, that he carried the deed to the house of the defendant before the expiration of the six months, who was not at home; and that a few days after the expiration of the six months he offered him the deed, and he refused to receive it; and it appears from other testimony, that he did so, because, as he said, it was too late, and he should not accept it. If the deed within the six months was delivered to one authorized by the defendant to receive it, or to one not so authorized, but who was afterwards authorized by him to retain it for his use, it would operate as an effectual conveyance within the six months; and the plaintiff would have performed the condition of the contract. McAllister making no objection, when the defendant desired him to get the deed, and when he desired him after it was in his hands to bring it out, may be considered as consenting to hold the deed for the use of the defendant. And the defendant, when informed that McAllister had the deed, making no intimation, that he wished him to bring it to him within any particular time, may be considered as assenting, that he should thus hold it until it should be convenient for him to present it or forward it. If the defendant, after the expiration of the six months, had demanded the deed of him, and he had refused to deliver it, such testimony in addition to that before stated and connected with the fact, that he had carried it to the defendant's house for delivery would have authorized a jury to find, that he had consented to receive it for the defendant and. to deliver it to him. And the defendant might have maintained trover for it. There does not therefore appear to be any substantial objection to the instructions of the presiding Judge.

In the contract the claim of Dunn is stated to be "for about one hundred and fifty dollars." But this is only a part of the description of the claim, and the intention is clear, that the defendant should relieve the plaintiff from it, whatever might prove to be the amount of it. The testimony, that Dunn had agreed to receive his own note for one hundred and

ten dollars in discharge of that claim, not being executed, could not destroy the right of the plaintiff, secured by the contract, to be relieved from all liability on account of it.

*Judgment on the verdict.·*