## ERICKSON v. BASTIAN et al.

No. 6209.   Decided May 4, 1940.   (102 P. 2d 310.)

*A. H. Hougaard* and *E. LeRoy Shields,* both of Salt Lake City, for appellant.

*Henry E. Beal,* of Richfield, for respondents.

MOFFAT, Chief Justice.

An agreement for the sale and purchase of certain property was entered into on August 25, 1938. Plaintiff brought this action claiming breach of the contract, demanding termination and repossession of the property.

Defendants take the position that there was no breach and that there had been a substantial performance. The court found in favor of the defendants and the plaintiff appeals.

This is a case in equity.

The agreement is not long and we set it out in its entirety:

"This agreement, made and entered into by and between Gertrude B. Erickson, of Loa, Utah, party of the first part and G. A. Bastian and Roean Bastian, his wife, of Loa, Utah, parties of the second part, Witnesseth:

"That party of the first part agrees to sell and parties of the second part agree to buy the following described real estate: Lot 1 (NE¼ NE¼) of Section 1, twp 28 South Range 2 East, containing 40 acres; also commencing o rod East of SW. corner lot 4 Section 31 Tp 27 South Range 3 East, thence North 48 rods, East 71 rods; South 48 rods; west 71 rods to beginning, containing 21 acres; also lot 4 of Section 6 twp 28 South Range 3 East, S.L.M. containing 36.53 acres, together with all improvements thereon and all water rights thereunto pertaining, consisting of 64 shares in the Fremont Irrigation Company, 1 water tap in the Loa water works Co.; 1 light attachment in the Peoples Light & Power Co., also all farm implements and machinery, 1 team and harness, 4 cows, 6 brood sows and 10 small pigs; also all floor coverings and 1 heaterola, by consent of both parties for the sum of $14,000.00, payable as follows: $2000.00 more or less payable on or before February 1, 1939, and $1,000.00 each year payable on February 1, of each year until the entire sum is paid, together with interest at the rate of 4% per annum payable annually at the time the principal is paid;

"It is understood that this land above described is mortgaged to the California Western States Life Insurance Company, and it is understood between both parties that whatever the amount of this mortgage is, the parties of second part agree to assume and pay, and the amount so paid shall be deducted from the purchase price of

$14,000.00, and the balance shall be payable to party of first part as above outlined.

"The parties of the second part are entitled to all the crop on said land just as it stands this day, and they are allowed to take possession on this date of the land, improvements and water rights.

"The parties of the second part agree that no water, land or improvements shall be disposed of by them until this contract is paid in full.

"The parties of the second part shall be allowed 30 days grace in making the above payments, in the event that their lamb crop or other crops cannot be disposed of by February 1 of each year.

"The parties of the second part agree to pay all taxes and assessments against said land and water commencing with the year 1938.

"In the event that the parties of the second part shall default in the payment of either principal or interest as above outlined, the first party shall have the right to re-enter and take peaceable possession of said land and improvements, and of this agreement and the warranty deed and all other papers pertaining to this agreement.

"This agreement and the warranty deed shall be held in escrow in the Clerk's office, inasmuch as it is understood that the abstract of title and water certificate are now held by the California Western States Life Insurance Company.

"It is understood that there is a second mortgage to State Bank of Wayne on said land and water, which parties of second part agree to complete the payment of, and the amount so paid shall be deducted from the first $2000.00 payment to party of first part, payment to bank to be made out of the 1938 crop on land."

Possession of the property was delivered by the plaintiff to the defendants at the date of the execution of the contract. The crops for the year 1938 were partly harvested and garnered upon the premises, and the balance were approaching maturity for the harvest. Farm implements and equipment and crops harvested and to be harvested and some cattle and horses and hogs were included in the sale.

From the date of the contract the defendants have had the use of all the real and personal property, have used and occupied the home—a substantially new modern five room house—and applied to their own uses all the crops of 1938 and 1939.

No payment was made at the time the agreement was made. Defendants took possession of the property.

Reference to the agreement discloses that the defendants were to pay for the property the sum of $14,000 as follows: $2,000 more or less on or before the 1st day of February 1939 and $1,000 payable on the 1st day of February of each year thereafter until the entire sum was paid, with interest at the rate of 4% per annum payable annually at the time the principal payments were to be paid. The defendants also agreed to pay all taxes and assessments upon the land and water, including 1938.

The testimony discloses and the court found that the defendants had not paid the plaintiff the $2,000 payable on February 1st, 1939, except the sum of $900 besides interest thereon amounting to $53.91. These payments were paid to the State Bank of Wayne in liquidation of a second mortgage referred to in the agreement. It is not disputed that there was no payment upon the principal $14,000—purchase price except as above stated. No interest was paid and the taxes for 1938 were not paid, neither upon the due date nor within the 30 day grace period.

Notice of default was served and demand for surrender of the premises was made. No defense was offered on the ground of any modification of the agreement. Defendants claim that the use of the words "more or less," following the provisions for the payment of $2,000 on or before February 1st, 1939; the oral understanding; the provision in the agreement that "the parties of the second part shall be allowed 30 days grace in making the above payments, in the event that their lamb crop or other crops cannot be disposed of by February 1 of each year," and the payment of $953.91 constituted performance of the contract. The court by its findings based upon the parol evidence offered and received without objection adopted the position contended for by defendants. The court was in error.

The purpose of a written contract is to put in definite and evidentiary form the terms upon which the minds of the parties to the contract have met. The subject matter of the contract and the law relating there-

to made it necessary to put the terms of the contract into writing.

We have the terms of the written contract. The express terms may not be changed or nullified by parol testimony, nor may such parol testimony antecedent to the reduction of the agreement to writing be considered where the language of the agreement is clear, unquestioned and unambiguous.

"The evidence of the oral contemporaneous agreement, conflicting as it does with the plain terms of the written contract, was inadmissible (*Peterson* v. *Chaix*, 5 Cal. App. 525, 90 P. 948; *Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal. App. 746, 103 P. 938; *Balfour* v. *Fresno*, 109 Cal. 221, 41 P. 876 * * *)." *Locomobile Co. of America* v. *Belasco*, 32 Cal. App. 329, 162 P. 920, 921.

Aside from the words "more or less" no question is raised as to the meaning or construction of the contract. The evidence shows that when the parties talked about the terms of the agreement, the $2,000 payment, falling due February 1, 1939, was not conditioned upon there being profits from the lambs with which to make payment. The original draft did not contain the words "more or less." They were inserted, however, before the agreement was signed.

The testimony of Mrs. Eckersly, the only disinterested witness, as to why the words "more or less" were inserted is as follows:

"This agreement was written up completely with the two thousand dollars put in it at first, before anything was said about the lamb crop and after it was written up and read over by the two parties, the lamb crop was discussed between the two of them and I was instructed to insert this clause 'more or less' right after the 'two thousand dollars' and I took all three copies of this agreement and put it in the machine and wrote it 'two thousand dollars, more or less' and they had been discussing the lamb crop and she said, 'I do not want to be hard on you and will put "more or less" if what you make on the lamb crop doesn't quite reach the two thousand dollars.' "

The testimony of Mrs. Erickson, plaintiff, is in accord with what Mrs. Eckersly said in the above quotation from the record. In the case of *Waddell et al.* v. *Phillips et al.*, 133 Md. 497, 105 A. 771, 773, the Supreme Court of the State of Maryland, in construing the word "about" used in a contract, stated:

"There was some evidence, which came in without objection, relative to a conversation between the parties just prior to entering into the agreement of May 1st, which was the occasion of the insertion into the contract of that expression. If objection had been made to this evidence, it would have been inadmissible. *Peterson* v. *Chaix*, 5 Cal. App. 525, 90 P. 948. But its admission throws very little light upon the solution of the question which we are considering."

No question is raised as to the admissibility of evidence, or that inadmissible evidence affected the decision arrived at by the court. The only errors assigned are that the evidence does not support the findings or conclusions of the trial court.

"The standard of interpretation of an integrated agreement, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would attach to the integration by a reasonably intelligent person acquainted with all the operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean." Restatement of the Law—Contracts, Section 230.

The circumstances and operative usages of the words "more or less" are such as a reasonably intelligent person acquainted with all the facts would have attached to those words. Counsel admit they have been unable to find a case in which the words "more or less" have been used with reference to the payment of a specific sum at a stated time. The fact that the expression is used with relation to the payment of a sum of money would not seem to require the application of a rule any different than when the expression is used in relation to other quantities where the amount is

a matter of approximation for lack of definitive information. In land contracts, deeds, or mortgages, the expression is frequently used and has been construed in numerous instances. Money cases involving the meaning of the word "about" are: *Browne* v. *Weir*, 5 Serg. & R., Pa., 401, 402; *Turner* v. *Whidden*, 22 Me. 121, 9 Shep. 121, 124; *Glade* v. *Germania Fire Ins. Co.*, 56 Iowa 400, 9 N. W. 320; *Brown* v. *People's Mut. Ins. Co.*, 65 Mass. 280, 11 Cush. 280, 282. "More or Less" was construed in the following cases: *Hills* v. *Edmund Peycke Co.*, 14 Cal. App. 32, 110 P. 1088, 1089; *Hadley-Dean Glass Co.* v. *Highland Glass Co.*, 8 Cir., 143 F. 242, 243. See Vol. 5, Words & Phrases, First Series, "More or Less" page 4582; Volume 3, Second Series, page 445; Volume 2, Fourth Series, page 715; Volume 4, Fifth Series, page 49. It was held in the case of *Peterson et al.* v. *Chaix et al.*, supra, that the terms "about" and "more or less" used in a contract for the sale of about 250 tons of grapes more or less did not create an ambiguity and parol evidence was not admissible to show that the terms "about" and "more or less" had a local or technical meaning.

The phrase "more or less" has been construed as "reasonably certain," "about," or "approximating." *Libby* v. *Dickey*, 85 Me. 362, 27 A. 253; "By estimation" or "about," 27 R. C. L., Sec. 152; "To a varying or undetermined extent or degree; somewhat as to fluctuate more or less." Webster's International Dictionary.

In some contracts, depending upon the nature of the subject matter and the circumstances and purposes to be attained, a broader or more liberal construction might be indulged than in others. Resort must be had not only to the testimony but to all the provisions of the agreement.

"A standard of interpretation is the test applied by the law to words and to other manifestations of intention in order to determine the meaning to be given to them." Restatement of the Law—Contracts, Section 227.

The contract provides for a thirty-day grace period in the event their lamb crop or other crops cannot be disposed of by February 1st each year. There was no intimation that this grace period or the payment of the various sums due was to vary any of the amounts required to be paid by the terms of the contract.

The payment of $900 to the State Bank of Wayne, plus interest in the amount of $53.91, in satisfaction of the second mortgage, was a credit upon the $2,000 called for under the contract and was not a substantial compliance with the contract. We do not need to rest the reversal of the judgment on this alone. At the time of the default and of the service of notice of default and demand for surrender of the property there was interest on the contract in the approximate amount of $420 and there was a default in the payment of the taxes in the sum of $280.

Counsel for respondent argues that as no time was specified in the contract as to when the taxes were to be paid, that there was no breach for non-payment of taxes. We think that it must be necessarily implied that the taxes must be paid when due.

The forfeiture of the contract is not equitable as the testimony shows there were crops upon the property worth approximately $1,500. Defendants had paid not much more than three-fifths of the value of the crops turned over to them.

The judgment of the trial court is reversed. The cause is remanded with directions to make findings according with the views expressed herein and enter a decree awarding the plaintiff the possession of the property.

Costs to appellant.

WOLFE, LARSON, McDONOUGH, and PRATT, JJ., concur.