MILFORD STATE BANK v. WEST FIELD
CANAL & IRRIGATION CO. et al.
BLACKNER v. WEST FIELD CANAL &
IRRIGATION CO.

No. 6806.   Decided October 2, 1945.   (162 P. 2d 101.)

See 32 C. J. S., Evidence, sec. 929; 20 Am. Jur., 999.

*Cline, Wilson* and *Cline,* of Milford, for appellant.

*Abe Murdock,* of Beaver, and *Rawlings, Wallace & Black* and *B. E. Roberts,* all of Salt Lake City, for respondents.

TURNER, Justice.

This is an appeal from a judgment of the District Court of the Fifth Judicial District in and for Beaver County, Utah. The action was commenced by the Milford State Bank against the West Field Canal and Irrigation Company and William T. Blackner to compel the defendants as conflicting claimants to interplead and litigate their respective claims. The plaintiff Bank alleges that a certain agreement together with two water stock certificates and other papers were deposited with the Bank as part of an escrow under stated terms and conditions; that the Irrigation Company had made a demand upon the Bank, under penalty of it being held liable in damages, for the delivery of one of the water stock certificates held by the Bank. The

parties to the escrow contract are Saraessa Harris Baker and William T. Blackner.

Both defendants answered the Bank's complaint, admitting the allegations contained therein. Blackner filed with his answer a cross-complaint against the Irrigation Company and alleged the escrow transaction growing out of a deal with Mrs. Baker wherein she agreed to sell and he agreed to buy for $6,000, payable $1,000 in cash and the balance within eight years, certain premises together with all water and water rights thereunto belonging; that the water right sold with the land consisted of water rights represented by Certificate No. 65 of the Irrigation Company; that a copy of the agreement together with an assignment of said water certificate were placed in escrow with the plaintiff Bank to be delivered when final payment should be made. A copy of the assignment is set forth in the pleading.

Blackner then alleges that he entered into possession of the premises on January 1, 1941, and has ever since been in possession and is entitled to the use of the water represented by said certificate No. 65 for forty-nine (49) shares of the Company's water. He asks for delivery of 49 shares of water, 21 shares more than that which had theretofore been delivered to him by the Irrigation Company; also that his right to 49 shares be declared and that he be awarded damages.

The Irrigation Company answered Blackner and alleged that stock certificate No. 65 for 49 shares of stock is spurious and void and its issuance was surreptitious, wrongful, and without consideration; that said Saraessa Harris Baker ignorantly, mistakenly and inadvertently endorsed and deposited with the escrow papers the purported stock certificate No. 65 purporting to represent 49 shares of water stock; and that such endorsement and deposit was without consideration and that she did not intend to pass, convey or transfer any water in excess of that belonging to the land. It is alleged that on February 13, 1943, Mrs. Baker sold all of her right and equity in the contract between

herself and Blackner to the Irrigation Company, which is now the owner of the same. The Irrigation Company admits that it had refused to furnish any water at any time to Blackner under the "so-called" certificate and that it would continue so to refuse, and claimed the right to have certificate No. 65 returned to it.

To the Irrigation Company's answer was added a counterclaim to the cross-complaint of Blackner. It is therein alleged in substance that the Irrigation Company was organized March 3, 1898, for the purpose of taking, conveying and distributing water of the Beaver River to certain lands aggregating 689 acres belonging to the incorporators; that the lands were those upon which said water had been used and theretofore appropriated for; that the water rights conveyed by the incorporators to the Company were sufficient to properly irrigate 689 acres of land and the Company had divided its capital stock into 689 units or shares; that each unit or share entitled the owner to sufficient water to properly irrigate one acre of land. It is also alleged that the value of a share of the capital stock of the Company had been fixed and established since the organization of the Company, as aforesaid, which the defendant Blackner at all times well knew.

Among the numerous allegations of the counterclaim is one that no assessments have ever been levied upon or against certificate No. 65 by the Irrigation Company and none has been paid thereon by anyone and no water has been supplied to anyone by virtue of the certificate and no one has claimed ownership of any rights under it from the time of its issuance to the time of the inadvertent endorsement and deposit of the same in escrow. Blackner filed a reply to the Company's counterclaim.

The pleadings of the parties to this action are extremely lengthy. In this statement relating to them we do not pretend to set forth all of the allegations either in form or substance. We think it unnecessary to recite lengthy pleadings if the determinative issues of the case are clearly presented. The trial court, after hearing the evidence and ar-

guments of counsel, made and entered its findings, conclusions and decree. It found the facts in favor of the Irrigation Company. We find the judgment to be consistent with the court's findings and legal conclusions.

Appellant, for reversal of the lower court's judgment, relies upon numerous assigned errors. They are presented under three headings: (1) Errors relative to the admissibility of evidence; (2) that the evidence is insufficient to sustain the findings and decree; and (3) failure to find the issues in favor of cross-complainant Blackner.

We shall not attempt to treat these, with their sub-headings, separately, but shall discuss some of the legal problems presented along with our statement and dissertation of facts. We turn attention first to the transaction between Saraessa Harris Baker and William T. Blackner. The litigation is the product of this transaction. If the record justifies the trial court's finding that Mrs. Baker sold Mr. Blackner her property with the appurtenant water and that the appurtenant water was 28 shares of the capital stock of the Irrigation Company and not 49 shares as represented by stock certificate No. 65, then the problems presented by the Company's counterclaim are secondary. According to the record, by far the greater weight of evidence supports the court's findings, conclusions and decree.

Because of appellant's first assignmnt of error, we shall examine the record to determine whether the court erroneously admitted evidence relating to the transaction between Mrs. Baker and Mr. Blackner, and if we find that the court erroneously admitted evidence regarding their deal, whether, with the improper evidence excluded, the court's findings and judgment relative thereto should stand or be set aside.

When Blackner, cross-complainant, was called to testify he stated in substance that he was acquainted with Saraessa Harris Baker; that he had purchased a farm from her and that in connection with the transaction he had signed a written contract, the one which was placed in escrow and involved in this action. The witness was asked if, prior to the execution of the contract, he had had a connversation

with Mrs. Baker. Then, over objection of counsel, Blackner, was allowed to answer and, in substance, said that he had talked with Mrs. Baker, talked over the terms she was asking and that he had asked to see her deed to the property and her water rights and that she brought out the papers and showed him the deed and that he looked over the water stock and asked Mrs. Baker,

"Which one of these water stocks is the one that belongs to the land?"

and she said,

"Well, this one is the one I am selling. * * * The one with Warren's name signed to it" (Cert. No. 65 for 49 shares).

Thus, it is apparent that Blackner was allowed to give his version of conversations concerning the transaction.

Counsel for Blackner contend that the court committed reversible error when it allowed Mrs. Baker to answer questions giving her verison of the transaction. On cross-examination, Mrs. Baker stated:

"Yes, after the papers were prepared in Mr. Miller's office, I signed them. That is my signature on the deed."

The papers were then taken to the Bank. She then denied that anything was said by her or Blackner regarding the water stock certificates. The record discloses that she testified further:

"I didn't know which certificate represented the water, but I knew there was water for the land."

On redirect, Mrs. Baker said:

"Well, I had both of these certificates in my possession but I wasn't certain of one from the other. I just turned them over, not realizing. * * * I knew they had something to do with the water."

Mrs. Baker was asked:

"It was never your intention, was it, Mrs. Baker, to convey anything but the water right belonging to the land that you sold?"

To this counsel objected. The witness was allowed to answer. She said:

"That is right, it was my intention just to convey the water right that was with the land I sold."

Did the court commit error in ruling that this evidence was admissible and particularly in allowing Mrs. Baker to make answer to that question? Ordinarily the intention of the parties to a written contract must be determined by an examination of the writing, but if a phase or a part of a written agreement is ambiguous and the intention of the parties cannot be determined from the writing itself, parol evidence is admissible to show the intention of the contracting parties. In this case our problem is to determine what the parties agreed to regarding the sale of water rights with the sale of the land. The Bank, holding the escrow, realized that it was in a precarious position, because of the ambiguity of the contract. The disagreement of the parties interested clearly shows that the contract involved is ambiguous and without extrinsic evidence the true intention of the parties cannot be determined. Therefore, the court properly allowed the witnesses to testify as to conversations relative to the transaction had prior to the execution of the contract. Where Blackner was permitted to testify to these matters, his objection to Mrs. Baker being given the same privilege is inconsistent. Although we think the question asking Mrs. Baker what she intended selling is improper, we think it not prejudicial for in her answer she reiterated testimony previously given and properly solicited.

M. L. Shepherd was one of the original incorporators. Stock certificate No. 22 for 49 shares was issued to him for the water rights he conveyed to the Company which were appurtenant to the lands he had in the district. Stock certificate No. 65, which was one of the certificates placed in the escrow envelope, appears upon its face to be regular in every respect. How this certificate happened to be issued is unknown as far as the record discloses. The certficate is

for 49 shares, is made out in favor of Warren Shepherd, a son of M. L. Shepherd, bears date of May 1, 1917, and apparently has the signatures of John A. Skinner, president, and Lester A. Shepherd, secretary. This certificate has been endorsed by Warren Shepherd to Mrs. Saraessa Harris Baker.

The stock certificate book shows that certificate No. 98 was issued for 21 shares of stock to John Atkin and was issued as a transfer of part of certificate No. 22. The stub shows the certificate was received by John Atkin on the 23rd day of March, 1921. The record also shows that John Atkin became the owner of part of the lands originally owned by M. L. Shepherd, between 20 and 21 acres. Stock book stub No. 99 discloses that the accompanying certificate was issued to Willard Shepherd for 28 shares of stock. Mrs. Baker acquired title to her land from Willard Shepherd. This certificate was also deposited in the envelope with the escrow agreement. It was not endorsed to Mrs. Baker but was in her possession when she took the papers to be placed in escrow.

Under the facts presented in this case, we find that the stock certificate No. 65 was issued inadvertently and without consideration and was an apparent duplication of certificate No. 22 for 49 shares. The record fails to disclose why this was done as certificate No. 22 was not surrendered or accounted for and there is no written authorization for the issuance of certificate No. 65.

While certificates Nos. 98 and 99 were issued in lieu of certificate No. 22 at a later date than the issuance of certificate No. 65, and without surrender of the original certificate, the record relative to these two certificates is clear and unquestionable. Ever since these were issued water has been distributed to the holders of the certificates for use on the identical lands for which the original certificate was issued. Then, again, during all the years since issuance assessments have been levied against these shares and have been paid by the owners of record.

The record, by a great preponderance of the evidence, supports the court's findings that Mrs. Baker in her transaction with Blackner contracted to convey to Blackner the agreed acreage of her farm with the appurtenant water and not an agreed acreage with 49 or any other fixed number of shares of water stock and Blackner was well aware of this fact. It is clear that Mrs. Baker did not know what her water rights were. She thought certificate No. 65 was the correct one because it had been endorsed to her, yet she was not certain for she had never demanded water for her lands upon any other basis than that which had been used on her land.

The facts presented in this case are not similar to those of the recent case of *Commercial Bank of Spanish Fork* v. *Spanish Fork South Irrigation Co.*, 107 Utah 279, 152 P. 2d 547. There the bank in its regular course of business accepted a stock certificate of the irrigation company, valid upon its face, as collateral for a loan. The irrigation company was incorporated for different purposes and the holding of the certificate was entirely different from that of Blackner.

The record is sufficient to sustain the finding that Blackner bought the lands from Mrs. Baker with the appurtenant water right; that the appurtenant water right was 28 shares of the capital stock of the Irrigation Company on the basis of one share of stock to each acre of land. Shares of stock of an irrigation company issued in place of the vested water right for lands in an irrigation district are appurtenant unless they have been transferred and put to a beneficial use upon other lands.

Mrs. Baker never was benefited nor injured by the existence of certificate No. 65. She never asserted any claim for water in excess of 28 shares. We think that Blackner stands in no better position than Mrs. Baker. He was not an innocent purchaser of a designated number of shares of stock; he was the purchaser of the described lands together with the appurtenant water

rights. His own testimony discloses he had no intention of buying anything else.

The record supports the trial court's findings, conclusions and decree by a great preponderance of the evidence. We also find that the court did not commit any reversible error relative to the admission of evidence.

The judgment below is affirmed with costs to respondent.

LARSON, C. J., and WADE, McDONOUGH, and WOLFE, JJ., concur.