450 P.2d 743

John P. JONES, Plaintiff and Appellant,

v.

ACME BUILDING PRODUCTS, INC., and Gordon G. Lee, Defendants and Respondents.

No. 11171.

Supreme Court of Utah.

Feb. 10, 1969.

David E. Yocom, of Browning & Yocom, Salt Lake City, for appellant.

Reed L. Martineau, Robert M. McDonald, of Worsley, Snow & Christensen, Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiff-appellant, Jones, initiated this declaratory judgment action for a judicial determination of the term "net worth" as used in a written agreement of the parties to this action.

Jones and defendant, Lee, each owned one half the stock in the defendant corporation, Acme Building Products. They had frequent disputes and had discussed the possibility of one or the other dis-

associating from the business. Sometime in May of 1966, the parties met with their accountant, Branagan, and their attorney, Mecham. According to Branagan, the parties wanted to know if he had any ideas as to what the business might be worth; he responded that the annual audit would be made shortly and that they would then have some figures to consider. He suggested that book value would be the best evidence of the value of the business. He further suggested that they might emerge better financially if they dissolved the corporation and realized the assets and liquidated the liabilities. Subsequently, Jones elected to withdraw, and a Memorandum of Understanding and Agreement was prepared by Mr. Mecham and executed by the parties. The relevant clauses which the trial court interpreted were as follows:

Whereas, both Messrs. Jones and Lee desire to disassociate themselves in the conduct of the business known as Acme Building Products, Inc.; and,

Whereas, Gordon Lee has indicated a willingness to continue the operations of Acme Building Products, Inc.; and John P. Jones has indicated a willingness to disassociate himself from said business; and,

Whereas, it is agreed by both John P. Jones and Gordon Lee that the income from Acme Building Products, Inc. can be used to purchase the net worth value of the business accrued to the account of John P. Jones.

\* \* \* \* \* \*

2. When the foregoing Releases are secured and/or the events take place, and it is determined the net worth value applicable to the interest in Acme Building Products, Inc. now owned by John P. Jones, then John P. Jones will quitclaim all right, title and interest in any stock or interest in said Acme Building Products, Inc. to the said corporation.

3. As a condition to the aforesaid Release of all the interest in the business by John P. Jones, it is understood and agreed that a financial statement will be first drawn as of July 1, 1966, and that Gordon Lee and John P. Jones, with the aid of Jerry Branagan and Allan E. Mecham, will negotiate and enter into an Agreement whereby Acme Building Products, Inc. will agree to pay John P. Jones upon terms set forth by John P. Jones as a result of said negotiation, the balance due to him from an accounting which reflects the net worth of the said Acme Building Products, Inc.

The trial court found that the term "net worth" as used in the agreement was ambiguous and admitted parol evidence to determine the intention of the parties. The court held that the term "net worth" as used in paragraphs 2 and 3 of the agreement meant the net worth of Acme Building Products, Inc., as of July 1, 1966,

based upon the financial statement prepared by Jerry Branagan, C.P.A, and shall be equivalent to the book value of the corporation.

The parties agree that "net worth" means the difference between the assets and liabilities of the corporation. Their dispute involves the evaluation of the assets, which appellant contends should be determined at market value. The financial statement reflected the assets at their depreciated value, and the method of depreciation used was a double-declining balance or accelerated method which depreciated the assets faster in the first five years.

In the instant action, there was no evidence presented to indicate that there was, in fact, an actual disparity between market and book value. Jones merely anticipated a favorable return and indicated his dissatisfaction when the computations on Branagan's working paper revealed that the amount due by Acme to him was a negative value of $2,653.

Jones contends that the agreement was a fully integrated contract which should be interpreted within the four corners of the document without the aid of extrinsic evidence. He argues that the expressed intention of the parties can be found in the "whereas" clauses and that the term "net worth" should be interpreted accordingly. He then reasons that the term "net worth" should be interpreted acording to the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.[1] He cites as some of the relevant circumstances the following: Jones and Lee each owned one-half of the stock and were attempting to sever their six-year relationship; Jones, the withdrawing party, was giving up not only his ownership but also his $18,000 per year salary as president of the corporation; the remaining party, Lee, would become the sole shareholder of the corporation; the assets were carried on the corporate books at an accelerated depreciated value; the only discussion between the parties about the term book value in attempting to set a buy-out-price took place prior to the time negotiations were commenced which resulted in the drafting of the agreement in question. Jones concludes that with knowledge of the foregoing circumstances, a reasonably intelligent person would not interpret the term "net worth" as used in the contract as meaning the book value of the corporation, which would produce a totally unrealistic and unreasonable result. He substantiates his argument by citing Plain

1. See Ericksen v. Bastian, 98 Utah 587, 102 P.2d 310 (1940), and Restatement of the Law, Contracts, Section 230.

**206**

City Irrigation Company v. Hooper Irrigation Company,[2] where it is stated:

> \* \* \* Generally, where there is doubt about the interpretation of a contract, a fair and equitable result will be preferred over a harsh or unreasonable one. And an interpretation that will produce an inequitable result will be adopted only where the contract so expressly and unequivocally so provides that there is no other reasonable interpretation to be given it.

In essence, he contends that if the term "net worth" were intended to mean the book value of the corporation as of July 1, 1966, the resulting consequences to the withdrawing would be unreasonable. The assets of the corporation, being depreciated at an accelerated rate on the books, may not be reflected at their actual value. Thus Gordon Lee, the sole remaining shareholder after the purchase of the Jones' stock, could liquidate the assets, pay off the liabilities, and gain an advantage not contemplated by the parties to the agreement. On the other hand, such an unreasonable result could be averted if the withdrawing party's interest were based upon the actual value of the assets.

There are certain facts which clearly militate against this reasoning. As previously noted, there was no evidence presented to indicate the book value of the assets did not reflect their actual value; this whole case is premised on speculation. Secondly, Branagan suggested that they might emerge better financially if the corporation were dissolved; and Jones, through his actions, elected to take an alternative course. As part of the agreement, Jones was to be released from his personal liability as a guarantor for a corporate indebtedness in the sum of $60,000; it is reasonable to infer that he preferred this safer course of being released from the liabilities than facing the riskier alternative that upon liquidation the assets would exceed the sizable liabilities. Furthermore, he has completely ignored the express language of paragraph 3. "\* \* \* it is understood and agreed that a financial statement will be first drawn as of July 1, 1966, \* \* \* Acme Building Products, Inc. will agree to pay John P. Jones \* \* the balance due to him from an accounting which reflects the net worth of the Acme Building Products, Inc."

■ \* \* \* Generally speaking, neither of the parties, nor the court has any right to ignore or modify conditions which are clearly expressed merely because it may subject one of the parties to hardship, but they must be enforced "in accordance with the intention as \* \* manifested by the language used by the parties to the contract." [3]

---

2. 11 Utah 2d 188, 192, 356 P.2d 625, 628 (1960).

3. Ephraim Theatre Co. v. Hawk, 7 Utah 2d 163, 321 P.2d 221 (1958).

Branagan testified that the concepts he expressed at the meeting are contained in paragraph 3, i. e., he infers that the parties would contract the sale on the terms he stated, on the basis of the annual audit on July 1. It is also significant that Jones was the one who worked with Branagan in preparing the annual audit. The attorney, Mecham, summarized the meeting by testifying that the discussion led to the conclusion that Branagan would prepare the financial statement, and they would then determine from the net worth figure, who owed whom, and one would buy the other out. They left the analysis and determination of net worth to be taken from the financial statement which was to be prepared by Branagan based on book value, and no one instructed him to the contrary.

■■ Since the term "net worth" was susceptible of more than one meaning, the trial court properly admitted extraneous evidence to show the intention of the parties.[4] The judgment of the trial court is supported by substantial evidence and is

therefore affirmed. Costs are awarded to respondents.

CROCKETT, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ., concur.

writing itself, parol evidence is admissible to show the intention of the contracting parties. * * * The disagreement of the parties interested clearly shows that the contract involved is ambiguous and without extrinsic evidence the true intention of the parties cannot be determined. Therefore, the court properly allowed the witnesses to testify as to conversations relative to the transaction had prior to the execution of the contract. * * *"

---

4. Bennett v. Robinson's Medical Mart, Inc., 18 Utah 2d 186, 190, 417 P.2d 761 (1966); Milford State Bank v. West Field Canal & Irr. Co., 108 Utah 528, 534, 162 P.2d 101, 103 (1945), where the court stated: " * * * Ordinarily the intention of the parties to a written contract must be determined by an examination of the writing, but if a phrase or a part of a written agreement is ambiguous and the intention of the parties cannot be determined from the