558 P.2d 1337 (1977)
Richard MADSEN and Nancy A. Madsen, his wife, Plaintiffs and Appellants,
v.
PRUDENTIAL FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant and Respondent.
No. 14530.
Supreme Court of Utah.
January 14, 1977.
*1338 Robert J. DeBry, Salt Lake City, for plaintiffs-appellants.
Joseph J. Palmer, Salt Lake City, for defendant-respondent.
MAUGHAN, Justice:
On appeal is a summary judgment granted to defendant, hereafter Prudential, against plaintiffs, hereafter Madsen or trustors. The action is founded upon terms of a deed of trust; and was brought to determine the status of the parties, and the legal consequences pursuant to such terms. We reverse the summary judgment, and remand for further proceedings. Costs are awarded to Madsen. Statutory references are to U.C.A. 1953.
Madsens are trustors, and defendant is both the trustee and beneficiary under a deed of trust executed September 21, 1964, for the purpose of securing a promissory note in the sum of $16,800. The security conveyed was the home in which plaintiffs reside.
To protect the security, the trustors further agreed:
2. To keep the buildings and improvements on the above described premises insured against loss by fire, and such other casualties and in such forms of insurance, and in such amounts, and in such companies as may be required by and as may be satisfactory to the beneficiary, for the benefit of the beneficiary, and to pay the premiums therefor promptly when due, and the policies of insurance shall be held by the beneficiary, it being understood, however, that the beneficiary shall in no event be responsible for the sufficiency or form or substance of any policy of insurance, or for the solvency or sufficiency of any insurance company in respect to the insurance herein provided.
.....
4. To pay before delinquent all taxes and assessments affecting said property (including assessments on appurtenant water stock and costs, interest and penalties thereon); and all encumbrances, charges and liens, with interest and penalties on said property or any part thereof, which appear to be or are prior or superior hereto.
In addition to the monthly payments as provided in said note, the trustor agrees to pay to the beneficiary, upon the same day each month, budget payments estimated to equal one-twelfth of the annual taxes and insurance premiums; said budget payments to be adjusted from time to time as required, and said budget payments are hereby pledged to the beneficiary as additional security for the full performance of this deed of trust and the note secured hereby. The budget payments so accumulated may be withdrawn by the beneficiary for the payment of taxes or insurance premiums due on the *1339 premises. The beneficiary may at any time, without notice, apply said budget payments to the payment of any sums due under the terms of the deed of trust and the note secured hereby or either of them. Trustor's failure to pay said budget payments shall constitute a default under this trust. [Emphasis supplied.]
Madsen's appeal is predicated on the theory that the monthly budget payments under provision 4 of the instrument constitute a common law pledge. They alleged defendant had invested this pledged property, and earned a substantial profit. An accounting is sought on the ground the substantial profits from the investment of the pledged funds constitute an unjust enrichment, entitling them to restitution.
The trial court ruled the funds accumulated, from the monthly budget payments, were not pledged property. Therefore, the law of pledge was not applicable.
In Campbell v. Peter[1] this court stated:
A pledge is really one of the simplest forms of security. It is the passing of possession of a chattel by the owner thereof to the pledgee who is thereby entitled to hold it until the debt is paid or the obligation performed. [Citations]
We further cited with approval the definition in the Restatement Security, Sec. 1, p. 5, which provides:
A pledge is a security interest in a chattel or an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty.
Comment d. of Sec. 1, p. 10 states:
The term "chattel" means any physical object which is capable of manual delivery and which is not the subject-matter of real property. It includes instruments and documents.
A deposit of money as security for the performance of a contract has been recognized as a valid pledge.[2]
... it [is] of no consequence that the amount of funds subjected to the lien, and thus, the amount of the lien, may vary during the existence of the pledge. The amount is ascertainable at any given time, and thus the lien is perfected as to amount.[3]
In the current matter, plaintiffs, as the trustors, agreed to protect the security of Prudential by paying the insurance and taxes. Madsen agreed to pay the budget payments, and to pledge them to the beneficiary "as additional security for the full performance" of the deed of trust and the note secured thereby.
The essential elements of a pledge are contained in the agreement, viz., the existence of a debt or obligation, a transfer of property to the pledgee, to be held as security and, if necessary, to be used to assure performance of the obligation. Furthermore, the payments accumulated, may, in the discretion of the beneficiary, be withdrawn for the payment of taxes, insurance premiums due, or any sum due under the deed of trust, or note. There is no contract right granted to Madsen to compel defendant to pay the insurance premiums or taxes. The payments accumulated may be retained as security or applied for the purposes stated. The primary obligation to pay the insurance, taxes, and any sum due under the deed of trust or note is Madsen's. The provisions of section 4 grant a security interest to Prudential, for the purpose of securing performance of trustors' obligations.
Madsen cites Hoyt v. Upper Marion Ditch Company[4] to establish the legal consequences, under a common law pledge, wherein profits accrue to pledgee; as a result of the possession of a pledged chattel. We there said it is the duty of a pledgee to collect the accruals, from the security, and *1340 apply them to the debt. We there explained: when the property pledged is of such a character as not to be lessened by use, the pledgee does not incur liability by using it; but, if from the use of it profits are derived, pledgee must, in the absence of a special agreement, account for them to the pledgor. There cited as authority was 21 R.C.L. 665-666, Sec. 28; the relevant provisions of which are:
... If from the use of the property pledged profits are derived, the pledgee must in the absence of a special agreement to the contrary account therefor to the pledgor, and apply the net proceeds of such use to the extinction of the debt. So if any profits accrue from property held as collateral, such profits, while they may be collected and retained by the pledgee, must be credited to the pledgor, or applied to the sum due from him, as where dividends accrue on pledged stock, or interest is collected on a security held as collateral.[5]
The foregoing principles of the law of pledge are not new. Indeed, Madsen's counsel cites the Code of Manu and that of Hammurabi, for early examples.[6] These principles have not been discarded. In our Uniform Commercial Code we find:
Unless otherwise agreed, when collateral is in the secured party's possession
.....
(c) the secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation; ... .[7]
An excursus to 9-207, of the Uniform Commercial Code, illuminates the provision:[8]
2. Subsection (2) states rules, which follow common law precedents, and which apply, unless there is agreement otherwise, in typical situations during the period while the secured party is in possession of the collateral.
This principle is also set forth in the Restatement, Security, Sec. 27, p. 91:
The pledgee has the duty to account to the pledgor for the increase or profits accruing to the pledgee as a result of the possession of the pledged chattel.
ELLETT and WILKINS, JJ., concur.
CROCKETT, Justice (dissenting).
I have no disagreement with the general proposition advocated by the plaintiffs, and as set forth in the main opinion, that where there is a simple pledge of property, which can be put to profitable use without lessening its value, and the pledgee uses it for a profit, the profit should inure to the benefit of the pledgor, unless the understanding of the parties is to the contrary. It is not my understanding that the position of the defendant or of the trial court is in disagreement therewith. That position briefly stated is this: That it is shown that both the plaintiffs and the defendant were fully aware of the manner in which this so-called monthly "budget payment" of one twelfth of the taxes and insurance for the year was to be made and handled to insure payments of those essentials; that even though plaintiffs were so aware and considered this to be unfair, they did not then so state, nor make any request that interest should be paid thereon, but voluntarily entered into the contract fully and clearly setting forth the rights and obligations of the parties, but without the contract containing any such covenant as to the payment of interest.
There are some elementary principles of contract law that should be given consideration here: that when parties negotiate on a subject matter and reduce their agreement to writing, it should be presumed to consolidate their entire understanding as to mutual *1341 rights and obligations on that subject matter;[1] and further, that the contract should be enforced and enforceable against each party only in accordance with the covenants expressed therein.[2]
Pertinent to the plaintiffs' demand for payment of interest on the "budget payment" it is to be noted that the documentary evidence shows that over the years of their contract that account had an average balance of $275.42, which at an interest rate of 5% would produce $13.70 per year; and that the estimated cost to the bank of the collecting, accounting and disbursing of such "budget payments" would be $16 + per account per year.
When all of the foregoing is considered in the light of the principles of law set forth above, I think the trial court was justified in adopting the position essayed by the defendant: that if the plaintiffs had desired a covenant to pay interest on the "budget payment" they should have so stated and negotiated for such a covenant in the contract. But having failed to do so, they should not be permitted to stand by and make these payments for 11 years without expressing any expectation or making any demand for interest thereon, and then attempt to impose a new obligation upon the defendant, not provided for in the contract.
I would affirm the judgment, leaving the parties to their rights as expressed in the covenants of the contract as made, or as may be made in the future with respect to interest on such payments.
HENRIOD, C.J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.
NOTES
[1] 108 Utah 565, 568, 162 P.2d 754, 755 (1945).
[2] Anderson v. Pacific Bank, 112 Cal. 598, 44 P. 1063 (1896); United States v. Harris, USDC WD La. 1966, 249 F. Supp. 221, 224; 68 Am.Jur.2d, Secured Transactions, Sec. 58, pp. 886-887.
[3] United States v. Harris, note 2 supra.
[4] 94 Utah 134, 143, 76 P.2d 234 (1938).
[5] See 69 Am.Jur.2d Secured Transactions, § 223, pp. 58-59.
[6] I.A. Rocureck and J.S. Wigmore, Source of Ancient and Primitive Law, p. 401 (1915).
[7] 70A-9-207(2), U.C.A., 1953.
[8] 3 ULA, Uniform Commercial Code (Master Edition) § 9-207 p. 123.
[1] Mawhinney v. Jensen, 120 Utah 142, 232 P.2d 769.
[2] See Jones v. Acme Bldg. Products, 22 Utah 2d 202, 450 P.2d 743.